**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**James WILLIAMS, Defendant–Appellee.**

No. 89–3494.

United States Court of Appeals,
Fifth Circuit.

May 10, 1990.

Mervyn Hamburg, Atty., Justice Dept., Washington, D.C., Lawrence Benson, Robert J. Boitman, Asst. U.S. Atty., John P. Volz, U.S. Atty., New Orleans, La., for plaintiff-appellant.

John Wilson Reed, New Orleans, La., for defendant-appellee.

BEFORE WISDOM, POLITZ, and JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

## I

A three-count indictment filed on May 12, 1989 charged defendant/appellee Williams with conspiracy to possess 670 grams of cocaine with intent to distribute, use of the mails to facilitate drug trafficking, and use of a person under eighteen years of age to assist in avoiding detection for drug trafficking. The essence of the offenses charged is that the defendant arranged for a package of cocaine to be mailed by someone in Los Angeles to an address in New Orleans, and that the defendant caused Keokuk Jackson, a person under the age of eighteen, to take delivery of the package from the postal service.

On May 30, 1989, the government advised defense counsel of its intent to offer proof of a series of nineteen mailings that occurred in January and February 1989 and that were similar to the March 7 mailing referred to in the indictment. The defendant filed a motion to exclude that evidence. The district court granted the motion to exclude and denied a motion for reconsideration of its exclusion order. We REVERSE.

## II

Prior to the hearing held by the district court on the motion to exclude, the government provided the court with a list of the nineteen mailings at issue. In addition, the government informed the court that: 1) all nineteen prior mailings, like the March 7 mailing, bore ficticious Los Angeles return addresses; 2) a notebook found in the possession of the defendant contained the names or addresses of all of the delivery locations except one; 3) the defendant stated at the time of his arrest that he resided at 3507 Audubon Ct., the address to which two of the prior mailings were addressed; 4) one of those two packages mailed to 3507 Audubon is known to have contained cocaine; and 5) two or three individuals handwrote the mailing labels on all of the packages in question.

At an exclusion hearing on June 1, 1989, the government explained the background of the case as follows. On January 12, 1989, peculiar circumstances incident to a package mailed from Los Angeles to New Orleans aroused the suspicion of a postal worker. Government agents checked the Los Angeles return address on the package and found it to be ficticious. Under a warrant, that package was opened and found to contain cocaine. An investigation revealed that, during that month of January 1989, four similar packages had been sent to New Orleans from fictitious Los Angeles addresses.

During the remainder of January and February 1989, an additional fifteen similar packages were sent from Los Angeles to New Orleans and were identified by investigators. Certain peculiarities tended to link the defendant to these other packages. One package was delivered to a woman using an alias and claiming to be the addressee, "Cherry Wilson." A photograph of that woman was found among the belongings of the defendant. Another of the packages was accepted by Keokuk Jackson, the individual under eighteen years of age referred to in the indictment. Ms. Jackson furnished to the postal employee who delivered the package a torn page containing the name of the sender and the

airbill number of the package. The notebook from which the page had been torn was later found in the possession of the defendant.[1] Yet another of the packages was delivered to an address on Reynes Street. Shortly after the package was delivered there, the defendant arrived at that address and left that house carrying the package.

The final package in the series is the one referred to in the indictment. It was express-mailed from Los Angeles on March 6 to "Shaw Williams" at a New Orleans address. The New Orleans postal inspectors investigating the case secured warrants to open this package and to search the residence to which it was addressed. Inside the package the inspectors found 670 grams of crack cocaine. That cocaine was removed and replaced with sham crack, after which the package was delivered. Keokuk Jackson accepted delivery. Shortly, the defendant arrived at the house to which the package had been delivered. The inspectors then executed the warrant to search the house. They found Keokuk Jackson and the defendant in the house, and the package open on the kitchen table. The defendant admitted having opened the package and said that he had expected to receive a shipment of jogging suits for resale. A search of the defendant's car uncovered the notebook that contained the delivery addresses and from which the page that Keokuk Jackson gave the postal employee had been torn.

Based on written submissions and the exclusion hearing, the district court granted the defendant's motion to exclude evidence regarding the nineteen mailings before the March 7 mailing from the defendant's upcoming trial on the three count indictment. The government appeals from that exclusion order.

### III

■ The proper test to apply in deciding the admissibility of "similar acts" or "other acts" evidence depends upon wheth-

er the evidence in question is "intrinsic" or "extrinsic" evidence. "Other act" evidence is "intrinsic" when the evidence of the other act and the evidence of the crime charged are "inextricably intertwined" or both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged. *See United States v. Torres*, 685 F.2d 921, 924 (5th Cir.1982). *See also, U.S. v. Stovall*, 825 F.2d 817, 825 (5th Cir.1987). The district court correctly found that the other-acts evidence sought to be presented in the instant case did not constitute intrinsic evidence. The various mailings were distinct and distinguishable events none of which constituted a necessary preliminary for another.

■ The admissibility of extrinsic evidence is governed by Fed.R.Evid. 404(b) which states that,

> [e]vidence of other crimes, wrongs, or acts, is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunities, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Interpreting that rule, this court has stated that,

> [w]hat the rule calls for is essentially a two-step test. First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403....

*United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (en banc).

In the present case, the extrinsic evidence regarding the nineteen mailings would be presented not as evidence of the defendant's character but, rather, to show that the defendant had knowledge of the

---

1. It was this same notebook, mentioned above, that contained the names or addresses of all of the delivery locations except one.

contents of the package and intent to perpetrate the crimes charged in the indictment. The extrinsic evidence sought to be presented in this case, if indeed it is relevant to knowledge and intent, passes the first part of this court's two-part *Beechum* test for admissibility of extrinsic evidence.

█ Evidence is relevant if it makes the existence of any fact at issue more or less probable than it would be without the evidence. In the instant case, the relevance of the extrinsic evidence to the defendant's knowledge and intent depends upon the existence of certain conditional facts. The Supreme Court last year delineated the proper method for making relevancy determinations in cases in which relevancy turns on a condition of fact. The Court stated,

[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor....

Such questions of relevance conditioned on a fact are dealt with under Federal Rule of Evidence 104(b). Rule 104(b) provides: "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." In determining whether the Government has introduced sufficient evidence to meet rule 104(b), the trial court neither weighs credibility nor makes a finding that the government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence.

*Huddleston v. U.S.*, 485 U.S. 681, 689–90, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771, 782–83 (citations omitted) (1989).

In the instant case, the evidence regarding the prior mailings would be relevant to the defendant's knowledge and intent to receive cocaine in the twentieth mailing only if: 1) there existed a pattern of mailings similar to the March 7 mailings, and 2) the defendant was involved in those mailings. If a jury could reasonably find those conditional facts by a preponderance of the evidence, then the extrinsic evidence of the prior mailings would contribute to a showing of knowledge and intent through demonstration of a *modus operandi*.[2]

The district court in the instant case found that, applying the test prescribed in *Huddleston*, the conditional facts required for the relevancy of the extrinsic evidence could not be found. The district court reasoned that the presence of cocaine in the prior mailings was a necessary conditional fact that was not supported by sufficient evidence. We find that the pertinent conditional facts in this case do not include whether the prior packages contained cocaine. Even if the prior mailings did not contain cocaine, they may still be relevant to show modus operandi. They might, for example, have been used to test whether packages with fictitious return addresses would be delivered without incident. Because we find that the presence of cocaine was not a fact upon which relevancy of the extrinsic evidence is conditioned, and because we find sufficient evidence to support jury findings that there existed a pattern of mailings similar to the March 7 mailing and that defendant was involved in those prior mailings,[3] we find that the relevancy prong of the *Beechum* test is met in this case.

---

**2.** "Other act" extrinsic evidence need not be evidence of other *wrongful* acts but may be evidence of any extrinsic acts relevant to the criminal act charged. *See, United States v. Rubio-Gonzalez*, 674 F.2d 1067, 1075 (5th Cir. 1982).

**3.** In seventeen of the nineteen prior mailings, the evidence linking the defendant to the prior mailings includes the presence of the New Orleans addresses in the defendant's notebook

and, in some cases, the presence of airbill numbers of the packages in that notebook and the defendant's arrival at the delivery locations shortly after delivery as well as other evidence, as discussed above. In the cases of the two mailings to which the defendant was not linked by such direct evidence, the mailings were nonetheless relevant as part of the overall pattern of mailings to which the defendant was linked.

We therefore proceed to the second prong of the *Beechum* test: whether the probative value of the extrinsic evidence outweighs its potential for prejudice. Fed. R.Evid. 403 states that,

> [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Regarding assessment of probative value in cases, such as the present one, in which extrinsic evidence would be used to show intent, this court has stated that,

> [p]robity in this context is not an absolute; its value must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference. It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice.

*United States v. Cathey*, 591 F.2d 268, 277 (5th Cir.1979) (quoting *Beechum*, 582 F.2d at 914).

Without admission of the extrinsic evidence in the instant case, the government's evidence would be limited to a showing that a package containing cocaine was delivered to an address in New Orleans when the defendant was not present and was accepted by Keokuk Jackson, that the defendant later arrived at that address, that officers executing a search warrant found the defendant in the vicinity of the package, and that the defendant stated that he had been expecting a package containing jogging suits. The very limited evidence the government could thus adduce on the issues of knowledge and intent increases the incremental probity of the extrinsic evidence. As long as it is clear to the jury that the extrinsic evidence of the prior mailings is presented only to show modus operandi to prove knowledge and intent, there is little danger that presentation of the extrinsic evidence will cause unfair prejudice or confusion of the issues or will mislead the jury.

We hold that the extrinsic evidence of the nineteen prior mailings passes both prongs of the *Beechum* test and may be admitted at trial. In order to ensure that the jury understands the purpose for which the evidence is introduced, the trial court will clearly instruct the jury that the evidence is presented to show a pattern of operation that would suggest knowledge and intent, *not* to show in any way that there were twenty mailings of cocaine.[4]

## IV

■ This court reviews a trial court's determinations regarding relevance of evidence on an "abuse of discretion" standard. *See, U.S. v. Barron*, 707 F.2d 125, 128 (5th Cir.1983); *U.S. v. Caldwell*, 820 F.2d 1395, 1404 (5th Cir.1987). That rigorous standard of review notwithstanding, we REVERSE the trial court's ruling in this case and hold that evidence of all nineteen prior mailings are admissible at trial as evidence of knowledge of and intent to commit the crimes charged in the indictment.

4. Moreover, the government, in presenting its case at trial, may not suggest to the jury there were twenty mailings of cocaine.