**UNITED STATES of America**

**v.**

**Joseph BUTCH.**

**Criminal No. 98–390.**

United States District Court,
D. New Jersey.

May 3, 1999.

Faith S. Hochberg, U.S. Attorney, William J. Hughes, Jr., Jeremy D. Frey, Assistant U.S. Attorneys, Camden, NJ, for U.S.

Mark W. Catanzaro, Law Offices of Mark W. Catanzaro, Moorestown, NJ, for Joseph Butch.

## OPINION

ORLOFSKY, District Judge.

This case presents interesting evidentiary issues which are unresolved in this Circuit. On June 5, 1998, Joseph Butch ("Butch") was arrested and charged with conspiracy to distribute and to possess with intent to distribute oxycodone, a narcotic drug and a controlled substance, in violation of 21 U.S.C. § 846. *See* Criminal Complaint (filed Jun 5, 1998); Indictment (filed Jun. 18, 1998). Butch's trial on the one count Indictment is scheduled to begin today, May 3, 1999. On April 26, 1999, the Government filed three motions *in limine* seeking: (1) "admission of certain evidence which is intrinsic to, and background of, the conspiracy charged in the Indictment, or in the alternative, to seek the admission of such evidence under [Federal Rule of Evidence] 404(b)," *see* Notice of 404(b) Motion (filed Apr. 26, 1999); (2) "exclusion at trial of certain evidence concerning prior conduct of a potential [Government] witness under [Rule] 608(b), *see* Notice of

608(b) Motion (filed Apr. 26, 1999); and (3) the admission of certain evidence concerning prior criminal convictions of the defendant should he testify at trial under [Rule] 609." *See* Notice of 609 Motion (filed Apr. 26, 1999). Butch opposes all three motions.

For the reasons set forth below, the Government's motion to admit into evidence the January and early May, 1998, events as "intrinsic" to the conspiracy charged in the Indictment shall be denied. The Government's Rule 404(b) motion as to this evidence, however, shall be granted, and the testimony of Robert Manning regarding the events of January and early May, 1998, shall be admitted into evidence at trial for the limited purpose of establishing the background of the conspiracy charged in the Indictment. In addition, the Government's Rule 608(b) motion seeking to exclude evidence of George Fronick's prior false testimony shall be denied. Finally, the Government's Rule 609 motion to admit Butch's 1984 federal and 1989 state convictions into evidence for the purpose of impeaching Butch's credibility, should he choose to testify, shall be granted in part and denied in part. The Government shall be permitted to impeach Butch's credibility using his 1989 state conviction, should he choose to testify. In all other respects, the Government's Rule 609 motion shall be denied.

## I. THE GOVERNMENT'S RULE 404(b) MOTION IN LIMINE

The Government seeks to admit into evidence the testimony of Butch's alleged coconspirator, Robert Manning ("Manning"), relating to two instances of Butch's prior criminal conduct allegedly occurring before the commencement of the conspiracy charged in the Indictment. *See* Government Brief in Support of 404(b) Motion (filed Apr. 22, 1999) at 1 ("Gov.404(b) Brief"). The Government has proffered[1]

---

**1.** In support of its *in limine* motions, the Government has not submitted any affidavits

to substantiate the factual statements asserted in its supporting briefs. For the purposes of

that Manning will testify that in "January[,] 1998[,] ... Manning agreed with Butch to allow Butch to take an Amerisource[2] oxycodone shipment [bound for] the Veterans Hospital in Philadelphia from the delivery truck that Manning was driving[, and that] Manning was paid $5,000 by Butch for his complicity in this theft." *See id.* (footnote added). The Government further proffers that Manning will testify that:

> [I]n about April[,] 1998, [Butch and Manning] began watching and following the truck driven by George Fronick in hopes of finding an opportunity to steal drugs from Fronick's truck. These events included Butch providing to Manning what he represented was a key to gain access to Fronick's truck. At one point [Frederick] Moll, Manning and Butch followed Fronick's truck in about May prior to May 19. Ultimately, as [the Government] expect[s] the testimony to show, Butch decided to solicit Fronick directly to aid in the theft on about May 19, 1998. . . .

*See id.* The Government contends that the January and early May, 1998, events "are intrinsic to the proof of the charged

conspiracy, are part of that conspiracy, and should be admitted at trial[,]" subject only to the limits of Rule 403.[3] *See* Gov. 404 Brief at 2. Alternatively, the Government contends that the January and early May, 1998, events are "fully admissible under Rule 404(b) ... as proof of opportunity, background, and common scheme and plan."[4] *See* Gov. 404 Brief at 4.

Butch opposes the motion. He contends that: (1) the January and early May, 1998, events are not intrinsic to the conspiracy charged in the Indictment; (2) the late date of the Government's disclosure unfairly prejudices Butch's defense; and (3) the Government "has failed to make the necessary showing to permit introduction pursuant to Rule 404(b) to establish opportunity[,]" background and common scheme and plan. *See* Defendant's Brief in Opposition to 404(b) Motion at 9–11 ("Def. 404 Brief").

### A. *Intrinsic Versus Extrinsic Evidence and the Legal Standard Governing Rule 404(b) Motions*

■ As a general rule, all relevant evidence is admissible. Fed. R. Ev. 402. Evidence is relevant if its existence simply has some "tendency to make the existence

---

these motions, the Court will treat the factual statements, made by the Government in its briefs, as an offer of proof. The Court notes, however, that the preferred practice is the one set forth in Rule 47 of the Federal Rules of Criminal Procedure, which provides:

> An application to the court for an order shall be by motion. A motion other than one made during a trial or hearing shall be in writing unless the court permits it to be made orally. It shall state the grounds upon which it is made and shall set forth the relief or order sought. It may be supported by affidavit.

*See* Fed.R.Crim.P. 47; *see also* Fed. R. Ev. 104 (Advisory Committee Note).

**2.** Amerisource Corporation "is a pharmaceutical distributor located in Thorofare, New Jersey. It distributes pharmaceutical supplies, sundries and controlled substances to hospitals in and around Southern New Jersey and Philadelphia, Pennsylvania." *See* Criminal Complaint (filed Jun. 5, 1998), ¶ 1.

**3.** Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*See* Fed. R. Ev. 403.

**4.** Rule 404(b) provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

*See* Fed. R. Ev. 404(b).

of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Ev. 401; *see United States v. Murray,* 103 F.3d 310, 316 (3d Cir.1997). "Rule 404(b), although viewed as a rule of inclusion rather than exclusion, provides for the exclusion of relevant evidence in certain situations." *United States v. Sriyuth,* 98 F.3d 739, 745 (3d Cir.1996). Rule 404(b) provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed. R. Ev. 404(b). As the United States Supreme Court stated in *Huddleston v. United States,* 485 U.S. 681, 685–86, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988):

> [Rule 404(b)] generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon [another] relevant issue in the case. . . .

*Id.* "Thus, the threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Sriyuth,* 98 F.3d at 745–46 (quoting *Huddleston,* 485 U.S. at 686, 108 S.Ct. 1496).

Recently, in *United States v. Mastrangelo,* 172 F.3d 288, 294 (3d Cir.1999), the Third Circuit succinctly stated the legal standard governing the admission of evidence pursuant to Rule 404(b):

> [A]dmissibility under [Rule] 404(b) requires: (1) a proper evidentiary purpose; (2) relevance under [Rule] 402; (3) a weighing of the probative value of the evidence against its prejudicial effect under [Rule] 403; and (4) a limiting

instruction concerning the purpose for which the evidence may be used.

*Id.* (citing *Huddleston,* 485 U.S. at 691–92, 108 S.Ct. 1496; and *United States v. Sampson,* 980 F.2d 883, 886 (3d Cir.1992)); *see also Sriyuth,* 98 F.3d at 746; *United States v. Palma–Ruedas,* 121 F.3d 841, 851 (3d Cir.1997), *reversed on other grounds, sub nom United States v. Rodriguez–Moreno,* —— U.S. ——, 119 S.Ct. 1239, 143 L.Ed.2d 388, (1999); *United States v. Scarfo,* 850 F.2d 1015, 1019 (3d Cir.1988).

"To meet the first requirement and show a proper evidentiary purpose, the government must 'clearly articulate how that evidence fits into a chain of logical inferences' without adverting to a mere propensity to commit crime now based on the commission of crime then." *Mastrangelo,* 172 F.3d at 294 (quoting *Sampson,* 980 F.2d at 887). On this issue in *Sampson,* the Third Circuit stated:

> [T]he burden on the [G]overnment is not onerous. All that is needed is some showing of a proper relevance. Whereupon the trial court must judge the [G]overnment's proffered reason, the potential for confusion and abuse, and the significance of the evidence, and decide whether its probative value outweighs its prejudicial effect.

*Sampson,* 980 F.2d at 887 (discussing *Government of Virgin Islands v. Pinney,* 967 F.2d 912, 916 (3d Cir.1992)).

■ Rule 404(b) "does not extend to evidence of acts which are 'intrinsic' to the charged offense[.]" *See* Fed. R. Ev. 404(b) (Advisory Committee Note) (citing *United States v. Williams,* 900 F.2d 823 (5th Cir. 1990)); *see also* 2 *Weinstein's Federal Evidence* § 404.20[2][b] (Matthew Bender 2d ed.1997). "Rule 404(b) governs the admissibility of extrinsic evidence only." 2 *Weinstein's Federal Evidence* § 404.20[2][b] (citation omitted). The Fifth Circuit's decision in *United States v. Williams* is one of the leading cases on the so-called "extrinsic/intrinsic" dichotomy. In *Williams,* the Fifth Circuit observed:

The proper test to apply in deciding the admissibility of "similar acts" or "other acts" evidence [under Rule 404(b) ] depends upon whether the evidence in question is "intrinsic" or "extrinsic" evidence. "Other act" evidence[, as contemplated by Rule 404(b),] is "intrinsic" when the evidence of the other act and the evidence of the crime charged are "inextricably intertwined" or both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged.

*Williams,* 900 F.2d at 825 (citations omitted); *see also 2 Weinstein's Federal Evidence* § 404.20[2][b].

As defense counsel points out, the Third Circuit has yet to address the specific issue of what constitutes "intrinsic" versus "extrinsic evidence." Yet, the Government's reliance on *United States v. Blyden,* 964 F.2d 1375, 1378 (3d Cir.1992), for the proposition that the Third Circuit has embraced the *Williams* definition of "intrinsic," is not entirely misplaced. In *Blyden,* the Third Circuit held that "[w]hen the evidence of another crime is necessary to establish an element of the offense being tried, there is no 'other crime[,]' " falling within the limiting provisions of Rule 404(b). 964 F.2d at 1378; *see also United States v. Sriyuth,* 98 F.3d 739, 747 (3d Cir.1996). The Government, as well as Judge Weinstein's much cited treatise on evidence, have seized upon this language in *Blyden* as proof that the Third Circuit has endorsed the broad definition of "intrinsic" set forth in *Williams. See* Gov. 404 Brief at 3; *see also 2 Weinstein's Federal Evidence* § 404.20[2][b].

Butch, however, contends that *Blyden* must be read narrowly for the proposition that only conduct which "was an element of the offense" charged can be considered "intrinsic." *See* Def. 404 Brief at 4. District Courts in this Circuit have come out on both sides of this dispute. *Compare United States v. Conley,* 878 F.Supp. 751, 754 (E.D.Pa.1994) (discussing *Blyden*'s limited scope), *with United States v. Berto-*

*li,* 854 F.Supp. 975, 1056–57 (D.N.J.), *rev'd in part on other grounds and aff'd. in part* 40 F.3d 1384 (3d Cir.1994) (citing *Blyden* and *Williams* for the broader definition of "intrinsic" and collecting other circuit opinions in accord).

■ In deciding the Government's motion *in limine,* I need not resolve this definitional dispute because, even applying the broad definition of "intrinsic" set forth in *Williams,* I find that the January and early May, 1998, events are not intrinsic to the conspiracy charged in the Indictment. First, the January, 1998, events, involved only Butch and Manning. The January, 1998, events concerned a different shipment of oxycodone, five months removed from the conduct charged in the Indictment. Clearly, the January, 1998, events and the conduct charged in the Indictment were not part of a "single criminal episode." The January, 1998, events are also far too removed and distinct to be considered inextricably intertwined with, or necessary preliminaries to Butch's alleged solicitation of Fronick on May 19, 1998, and the subsequent conspiracy to possess and distribute the oxycodone shipment on June 5, 1998.

Similarly, the events of early May, 1998, though closer in time, are not intrinsic to the conduct charged in the Indictment. The conduct of Moll, Manning, and Butch, in following Fronick during April and early May, 1998, may be evidence tending to explain the circumstances of the relationship between the alleged conspirators, but it is not inextricably intertwined with the conduct alleged in the Indictment. The overt acts alleged in the Indictment relate specifically to the alleged conspiracy formed after Butch allegedly solicited the assistance Fronick in stealing the June 5, 1998, shipment of oxycodone. This charged conduct is distinct from, not intertwined with, the conduct of Moll, Manning, and Butch, prior to May 19, 1998.

Therefore, because I find that the events of January and early May, 1998, are not

intrinsic to the conduct charged in the Indictment, I conclude that these events are extrinsic to the charged conspiracy and admissible only, if at all, as other crimes, wrongs or acts, subject to the limitations of Rule 404(b). Accordingly, in so far as the Government seeks to admit the January and early May, 1998, events as intrinsic to the charged conspiracy, I shall deny the motion *in limine*.[5] I now turn to the Government's alternative theory of admissibility under Rule 404(b).

### 1. *Rule 404(b) Analysis*

■ In seeking admission of the January and early May, 1998, events, the Government proffers the following "proper evidentiary purpose[s:]" opportunity, background, and common scheme and plan. *See* Gov. 404 Brief at 4; *see also Mastrangelo*, 172 F.3d at 294 (citing *Sampson*, 980 F.2d at 887). Although the Government's burden of demonstrating a proper evidentiary purpose is "not onerous[,] . . . some showing of a proper relevance" is required, *Sampson*, 980 F.2d at 887, "articulating how [the wrongful acts] evidence fit[ ] into a chain of logical inferences." *Mastrangelo*, 172 F.3d at 294 (quoting *Sampson*, 980 F.2d at 887).

With respect to the proffered purposes of proving opportunity, common scheme and plan, the Government has failed to make any showing of "proper relevance," and has likewise failed to "articulat[e] how [the January and early May, 1998, events] fit[ ] into a chain of logical inferences" with the last links being the conduct charged in the Indictment. *See Sampson*, 980 F.2d at 887; *see also Mastrangelo*, 172 F.3d at 294. In addition, with respect to the proffered purpose of common scheme and plan, the Government has made no demonstration that the January and early May, 1998,

events and the conduct charged in the Indictment share "characteristics . . . so unusual and distinctive as to be like a signature." *Pinney*, 967 F.2d at 915 (stating that mere similarities between the two alleged incidents, without sufficient uniqueness, does not demonstrate a common scheme and plan); *see also Murray*, 103 F.3d at 317–18 (citing *Pinney* for rule that common plan or scheme refers to a situation where "the charged and the uncharged crimes are parts of a single series of events"). As I have stated previously, nor were the events of January and early May, 1998, part of a "single criminal episode" with the crime charged in the Indictment. *See* Section I.A *supra; see also Williams*, 900 F.2d at 825.

■ Regarding the proffered purpose of background, however, the Government has articulated the requisite "chain of logical inferences[.]" *Sampson*, 980 F.2d at 887; *see also Mastrangelo*, 172 F.3d at 294. The Government contends that the January and early May, 1998, events "show [the] relationship of [the] coconspirators and[, in particular,] . . . one coconspirators [sic] role in the entire illegal activity[ ]." *See* Gov. 404 Brief at 5 (citing *United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir. 1982)).[6]

In reviewing a District Court's application of Rule 404(b), the Third Circuit held that "testimony of . . . a co-conspirator . . . could be considered relevant to provide necessary background information, to show an ongoing relationship between [the defendant and a co-conspirator], and to help the jury understand the co-conspirator's role in the scheme." *Simmons*, 679 F.2d at 1050 (citing *United States v. Dansker*, 537 F.2d 40, 57–58 (3d Cir.1976), *cert. denied* 429 U.S. 1038, 97 S.Ct. 732, 50

---

**5.** The Government's Notice of Motion also sought to have the January and Early May, 1998, events admitted as "background of" the conspiracy, independent of Rule 404(b). As explained in detail in Section I.A.1 *infra*, such background information explaining the formation of a conspiracy is appropriately considered under Rule 404(b). *United States v. Moore*, 149 F.3d 773, 780–81 (8th Cir.1998); *see also United States v. Pipola*, 83 F.3d 556 (2d Cir.1996).

**6.** The Government incorrectly cited the *Simmons* case as *United States v. Brown*.

L.Ed.2d 748 (1977)); *see also Government of the Virgin Islands v. Harris*, 938 F.2d 401, 420 (3d Cir.1991) (citing *Simmons* with approval); *United States v. O'Leary*, 739 F.2d 135, 136 (3d Cir.1984) (permitting other acts evidence to provide background information and parties' acquaintanceship); *accord United States v. Moore*, 149 F.3d 773, 780–81 (8th Cir.1998) ("Rule 404(b) permits the introduction of evidence of other criminal activity to complete the story of the crime ... by explaining the circumstances of the alleged relationship between the alleged conspirators"); *United States v. Pipola*, 83 F.3d 556 (2d Cir. 1996) (same).

Butch takes issue with the Government's reliance on *O'Leary*, contending that the *O'Leary* is factually distinguishable from this case. *See* Def. 404 Brief at 9–10. While it must be admitted that the cases are not factually identical, in *O'Leary* the Third Circuit stated:

> The government contends that the challenged evidence [of the relationship between a witness and the defendant] was needed to show the background of the charges, the parties' familiarity with one another, and their concert of action. These constitute permissible purposes for admission of such testimony under Rule 404(b).

*O'Leary*, 739 F.2d at 136–37 (internal citations and quotations omitted). The Government's evidentiary purposes in *O'Leary* and the Government's evidentiary purposes in this case are identical, namely, to show background of the charges, the witness' and the defendant's relationship, and their concerted action. In light of *Simmons, Harris, Moore,* and *Pipola*, Butch's attempt to limit *O'Leary* to its specific facts, though spirited, is without merit. Accordingly, I find that the Government has sufficiently proffered a proper evidentiary purpose for introducing into evidence the January and early May, 1998, events.

Turning to the second requirement of the Rule 404(b) analysis, I must determine whether the events of January and early May, 1998, are logically relevant, pursuant to Rules 401 and 402 of the Federal Rules of Evidence. Clearly, Manning's testimony tends "to make the existence of [a] fact that is of consequence to the determination of th[is] action more probable or less probable than it would be without the evidence." *See* Fed. R. Ev. 401. First, Manning was allegedly a willing participant in the events of January and early May, 1998, as well as being part of the conspiracy charged in the Indictment. His testimony is logically relevant to explain his role in the criminal enterprise. Second, Manning's proffered testimony would give the jury a "complete the story of the crime ... by explaining the circumstances of the alleged relationship between the alleged conspirators." *Moore*, 149 F.3d at 780–81. Third, the evidence is logically "relevant to ... show an ongoing relationship between [Manning and Butch,]" *Simmons*, 679 F.2d at 1050, which allegedly continued through the dates of the conspiracy charged in the Indictment. *See* Indictment. Thus, I conclude that Manning's testimony about the events of January and early May, 1998, satisfies the second requirement of Rule 404(b), namely, logical relevance. *See Mastrangelo*, 172 F.3d at 294.

Considering the third requirement of admissibility under Rule 404(b), I conclude that the probative value of Manning's testimony related to the events of January and early May, 1998, is not substantially outweighed by its prejudicial effect. *See* Fed. R. Ev. 403; *see Mastrangelo*, 172 F.3d at 295 (stating that the "District Court ... [should] provide a clear explanation regarding the balance between the evidence's prejudicial and probative effects ..."). As an alleged participant in the charged conspiracy, Manning's testimony is significantly probative of the formation of his criminal relationship with Butch in January, 1998, as well as, the further development of that relationship during the events of early May, 1998.

Butch contends, however, that admission of the evidence would "overwhelm the jury

with other thefts and attempted thefts to establish that [Butch] is of bad character and more likely to have committed this offense." *See* Def. 404 Brief at 12. I disagree. Manning's proffered testimony as to the events of January and early May, 1998, does not rise to the level of the distracting, confusing, or emotionally charged evidence from which Rule 403 protects a criminal defendant. *See 2 Weinstein's Federal Evidence,* § 403.02[1][a]. Notwithstanding Butch's hyperbole, this evidence will not "overwhelm" a jury, nor will it result in an "undue tendency . . . suggest[ing] decision on an improper basis. . . ." *See* Fed. R. Ev. 403 (Advisory Committee Note).

In addition, any prejudice to Butch will further be abated by the fact that this Court is required to give the jury a "limiting instruction concerning the purpose for which the evidence may be used." *Mastrangelo,* 172 F.3d at 294 (citing *Huddleston,* 485 U.S. at 691–92, 108 S.Ct. 1496). Prior to the Government's inquiry into the events of January and early May, 1998, at the conclusion of Manning's testimony, and again when I charge the jury, I will instruct the jury as follows:

> Evidence that Mr. Butch was involved in a criminal enterprise with Mr. Manning in January, 1998, and with Mr. Manning and Mr. Frederick Moll in early May, 1998, has been admitted into evidence, but you may consider that evidence only as background to the offense charged in the Indictment, as evidence of Mr. Manning's and Mr. Butch's relationship prior to May 19, 1998, and as evidence of their concerted efforts prior to May 19, 1998. You may not, however, consider this evidence of Mr. Butch's prior involvement in a criminal enterprise in deciding whether or not the Government has proven Mr. Butch's guilt beyond a reasonable doubt for the offense charged in the Indictment. For the limited purpose for which this evidence has been received, you may give it such weight as you feel it deserves. You may not, how-

ever, consider this evidence for any other purpose.

*See* 1 Devitt, et al., *Federal Jury Practice and Instructions* § 11.09 (4th ed).

Therefore, I conclude that the Government has satisfied the admissibility requirements of Rule 404(b). Accordingly, I shall grant the Government's motion *in limine* to admit the testimony of Manning as to the events of January and early May, 1998, for the limited purpose of establishing the background of the conspiracy charged in the Indictment.

## II. THE GOVERNMENT'S RULE 608(b) MOTION IN LIMINE

The Government has moved *in limine* to exclude any impeachment of a potential Government witness, George Fronick ("Fronick"), by Butch based on the prior conduct of Fronick that "about ten or fifteen years ago, [Fronick] failed to testify truthfully in a proceeding in Philadelphia state court relating to his inquiry into an employee theft." *See* Government's Brief in Support of Rule 608(b) Motion at 1 ("Gov. 608 Brief"). The Government contends that "Fronick's admission of his own false statement should not be admitted primarily because of its age, because it was revealed by the witness himself, and also because the prejudice outweighs its probative value." *See id.* at 2.

Butch opposes the motion, contending that, because Fronick was the Government's confidential source, whose statement formed the basis of the Criminal Complaint against Butch, his failure to testify truthfully in a prior court proceeding is highly probative of his credibility. *See* Butch's Brief in Opposition to Rule 608(b) Motion at 3 ("Def. 608 Brief") ("[T]he probative value of such information is . . . extraordinary"). Butch further contends that this "extraordinary" probative value is not substantially outweighed by its prejudicial effect. *See id.* at 5 ("The only prejudice is that it hurts the government's case").

■ "Under [Rule] 608(b) [a][D]istrict [C]ourt has the discretion to admit evidence of specific instances of conduct to impeach a witness" credibility "if probative of truthfulness or untruthfulness." *United States v. Dowling*, 855 F.2d 114, 120 (3d Cir.1988). The text of the rule provides, in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

*See* Fed. R. Ev. 608(b). "The character of the previous conduct, the importance of the testimony, and the probable effect on the jury if the misconduct is divulged are all factors a judge must consider in deciding whether to allow inquiry about past conduct." *See* 6 *Weinstein's Federal Evidence* § 608.12[7][c] (citations and footnotes omitted). In addition, "[i]n deciding whether to permit cross-examination about prior misconduct bearing on credibility, the trial court should consider how old the misconduct is." *Id.* (stating that "[t]his is true even though remoteness ... is omitted from Rule 608") (footnotes omitted). Remoteness may reduce the probative value of certain evidence, but it does not preclude its admission under Rule 608(b). *United States v. Jackson*, 882 F.2d 1444, 1448 (9th Cir.1989) (*United States v. Weichert*, 783 F.2d 23 (2d Cir.1986) (per curiam)). Thus, the Court's inquiry under Rule 608(b) is essentially the analysis required by Rule 403. *See id.; United States v. Bocra*, 623 F.2d 281, 288 (3d Cir.1980) (stating that "Rule 608(b) is meant to tie into Rule 403 ...").

A party's Rule 608(b) "inquiry into specific conduct of the witness for impeachment purposes is quite limited[,]" constrained to the issue of truthfulness. *Bocra*, 623 F.2d at 288 (discussing the Advisory Committee note to Rule 608(b)). "The classic example of a permissible inquiry would be an incident in which the witness had lied." *Id.*

■ It cannot be disputed that Fronick's testimony is crucial to the Government's case. Fronick was the Government's confidential source. It was Fronick's statement to the authorities which prompted the investigation, arrest and filing of the Criminal Complaint against Butch. It is precisely because Fronick's testimony is so vital to the Government's case that his credibility is a material issue in this case. *See United States v. Beros*, 833 F.2d 455, 463–64 (3d Cir.1987) (stating that all witnesses "subject[ ] [their] credibility to scrutiny" upon taking the stand).

Here, Fronick has admitted that he lied while giving testimony during a court proceeding about an employee theft. As the Third Circuit stated in *Bocra* this presents the "classic example of a permissible inquiry" under Rule 608(b). *Bocra*, 623 F.2d at 288. Thus, I conclude that the Fronick's false testimony under oath is highly probative of his "character for truthfulness or untruthfulness[.]" *See* Fed. R. Ev. 608(b)(1).

Furthermore, I find that the Government's contention, that the probative value of the specific misconduct is substantially outweighed by its prejudicial effect because of its remoteness in time, to be unpersuasive. *See* Gov. 608 Brief at 2. The Government cites as authority, an unpublished bench opinion by this Court in another criminal matter. *See* Gov. 608 Brief at 1 (citing *United States v. Lee*, Crim. No. 98–188(SMO)), unpublished bench op. (D.N.J. July 23, 1998). The Government contends: "[I]n a similar circumstance, the Court has ruled ... that

events 13 years prior to trial are too old be admitted under Rule 608(b)." *See id.* Contrary to the Government's contention, *Lee* does not present a circumstance similar to this case. In *Lee,* a criminal prosecution for bank fraud, the Government sought to impeach the defendant with evidence that he had allegedly been involved in a check kiting scheme in 1985, which resulted in the defendant's participation in New Jersey's pretrial intervention program. *See United States v. Lee,* Crim. No. 98–188(SMO), Transcript (July 24, 1998) at 717–18.

In resolving the Government's Rule 608(b) application, in *Lee,* I held that "the information [about the check kiting scheme] is minimally probative of the defendant's character for truthfulness and is highly prejudicial." *See id.* at 718. Because of the interrelatedness of check kiting and bank fraud, I found the impeachment evidence highly prejudicial to the defendant. At issue was the concern that the jury would consider the impeachment evidence as substantive proof of the defendant's criminal propensities, rather than considering the evidence solely as impeachment evidence of his character for truthfulness. Thus, in *Lee,* the issue was whether there was enough probative value in the 1985 check kiting scheme to warrant its introduction into evidence in light of the substantial prejudice to the defendant.

In this case, the admission of Fronick's statement to impeach his character for truthfulness raises no such concerns. First, Fronick is a potential Government witness, rather than a criminal defendant weighing the pros and cons of testifying in his own defense. Second, unlike *Lee,*

there is no risk that the jury will draw improper adverse inferences against a criminal defendant from the use of the impeachment evidence. Third, in spite of the passage of time, the fact that Fronick gave false testimony while under oath in a case involving an employee theft is highly probative of his character for truthfulness in this case. While it is true that the passage of time, in this case, ten to fifteen years, may diminish the probative value of the evidence, given that Fronick's testimony, and therefore, his credibility, are crucial to the Government's case against Butch, I cannot say that the probative value is substantially outweighed by its prejudicial effect. *See Jackson,* 882 F.2d at 1448; *Weichert,* 783 F.2d at 26; *see also* Fed. R. Ev. 403.

In addition, because Butch's inquiry into Fronick's previous false testimony is limited to Fronick's "character for truthfulness or untruthfulness," as well as, limited by the requirements of Rule 611,[7] any prejudice to the Government is minimal, in comparison to the probative value of the evidence. *See* Fed. R. Ev. 608(b), 611. Given the probative value of Fronick's previous false testimony, and the lack of substantial prejudice to the Government's case, I find that the Government's reliance on *Lee* is misplaced. Accordingly, the Government's motion to prevent the impeachment of Fronick based on his previous false testimony shall be denied.

### III. THE GOVERNMENT'S RULE 609 MOTION IN LIMINE

The Government's third motion *in limine,* filed pursuant to Rule 609,[8] "seek[s]

---

7. Rule 611 provides, in relevant part:
   The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
   *See* Fed. R. Ev. 611(a).

8. Rule 609 provides, in relevant part:

For the purpose of attacking the credibility of a witness, evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence

the admission of certain evidence concerning prior criminal convictions of the defendant should he testify at trial...." *See* Notice of Rule 609 Motion (filed Apr. 26, 1999). Specifically, the Government seeks to impeach Butch, should he testify, using: (1) Butch's 1984 federal conviction for conspiracy to steal an interstate shipment of freight, theft of an interstate shipment, and theft of goods from customs custody; and (2) his 1989 Pennsylvania state conviction for aggravated assault, driving under the influence and failing to render assistance in connection with an accident involving death or injury. *See* Government's Brief in Support of Rule 609 Motion at 1, Exhs. A–B ("Gov. 609 Brief").

Butch opposes the motion contending: (1) the 1984 federal conviction is outside the ten year time bar of Rule 609(b), and the Government has failed to establish that the conviction's probative value substantially outweighs its prejudicial effect; and (2) under 609(a), the probative value of the 1989 state conviction is substantially outweighed by its prejudicial effect. *See* Butch's Brief in Opposition to Rule 609 Motion at 4–6, 9.

### A. *Legal Standard Governing a Rule 609 Motion*

"Evidence of a prior conviction can be admitted under Rule 609(a)(1) solely for the purposes of attacking credibility." *Government of the Virgin Islands v. Bedford,* 671 F.2d 758, 761 (3d Cir.1982) (Hunter, Circuit J.). "Rule 609(a)(1) is absolutely clear and explicit in requiring the trial court, before admitting evidence of a prior conviction, to make a determination that the probative value of the evidence outweighs its prejudicial effect to the defendant." *Id.* (citations omitted).

"The Government bears the burden of persuading the court that the evidence should be admitted...." *Id.* "The defendant is then permitted to rebut the Government's presentation, explicating the potentiality for unfair prejudice from admission of the evidence." *Id.*

In making this determination, a District Court should consider the following relevant factors: (1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; (4) the importance of the credibility of the defendant; and (5) generally, the impeachment value of the prior crime. *See id.* at 761 n. 4; *see also* 6 *Weinstein's Federal Evidence* § 609.04[2][a]. "This list does not exhaust the range of possible factors, but it does outline the more basic concerns relevant to the balancing under Rule 609(a)(1)." 6 *Weinstein's Federal Evidence* § 609.04[2][a] (citing *United States v. Jackson,* 627 F.2d 1198, 1209 (D.C.Cir. 1980)).

Where the prior conviction sought to be introduced into evidence for the purpose of impeaching the defendant's credibility is more than ten years old, the "conviction is not admissible for impeachment[, unless] ... the court [determines that,] in the interests of justice ... the probative value of the conviction substantially outweighs its prejudicial effect." 6 *Weinstein's Federal Evidence* § 609.07[1] (footnote omitted). A district Court considers similar factors of admissibility under 609(b) as under 609(a)(1). *See id.; see also United States v. D'Agata,* 646 F.Supp. 390 (E.D.Pa.1986). As Judge Weinstein has observed, however, "the standard for admission of a conviction more than 10 years

outweighs its prejudicial effect to the accused;
...
. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

*See* Fed. R. Ev. 609(a-b).

old is actually more stringent [than the Rule 609(a)(1) standard], since [the conviction] may be admitted only if its probative value substantially outweighs its prejudicial effect[,] . . . indicating that the admission of convictions more than 10 years old should be rare." 6 *Weinstein's Federal Evidence* § 609.07[1] (emphasis and footnotes omitted); *see United States v. Pritchard,* 973 F.2d 905, 908 (11th Cir. 1992) (stating that "there is a presumption against the use of prior crime impeachment evidence over ten years old; such convictions will be admitted very rarely and only in exceptional circumstances"); *United States v. Beahm,* 664 F.2d 414, 417 (4th Cir.1981) (stating that a District Court should only depart from the "prohibition against the use for impeachment purposes of convictions more than ten years old very rarely and in exceptional circumstances"); *United States v. Shapiro,* 565 F.2d 479, 481 (7th Cir.1977) (applying "exceptional circumstances" test); *see also* Fed. R. Ev. 609 (Advisory Committee Note) (stating "[i]t is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances"). As with Rule 609(a)(1), the Government bears the burden of persuading the court that the evidence should be admitted. *See* 6 *Weinstein's Federal Evidence* § 609.07[2] (citing *United States v. Cavender,* 578 F.2d 528, 530 (4th Cir. 1978)); *see also United States v. Moore,* 917 F.2d 215, 234 (6th Cir.1990).

■ The higher standard of Rule 609(b) is only triggered if "more that ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." *See* Fed. R. Ev. 609(b). In calculating this ten year period, the term "release from confinement" does "not include any period of probation or parole." 6 *Weinstein's Federal Evidence* § 609.07[3] (citing *United States v. Daniel,* 957 F.2d 162, 168 (5th Cir.1992)). In construing the language of Rule 608(b), the Fifth Circuit reasoned:

The historical note to Rule 609 shows that, prior to 1972, the rule contemplated that the ten-year period should run from "the expiration of the period of his parole, probation, or sentence." This section was amended in 1972, however, and now states that a conviction is not admissible if more than ten years have elapsed since "release from confinement." The change in language of the rule forecloses the interpretation [that "release from confinement" includes parole and probation]. . . .

*Daniel,* 957 F.2d at 168 (criticizing *dicta* to the contrary in *Trindle v. Sonat Marine Inc.,* 697 F.Supp. 879 (E.D.Pa.1988)); *accord United States v. Wallace,* 848 F.2d 1464 (9th Cir.1988). Applying these legal principles, I now turn to consider the two convictions the Government seeks to admit into evidence for the purpose of impeaching Butch's credibility, should he choose to testify at trial.

### B.  *Butch's 1984 Federal Conviction*

■ On August 15, 1984, in the Eastern District of Pennsylvania, a jury convicted Butch of conspiracy to steal an interstate shipment of freight, Count I; theft of an interstate shipment, Count II; and theft of goods from customs custody, Count III. *See* Gov. 609 Brief, Exh. A. On October 4, 1984, Judge Norma L. Shapiro sentenced Butch to five years probation on Counts I and II, and a two-year term of imprisonment on Count II. *See id.* On November 4, 1985, Judge Shapiro granted Butch's motion for a reduction of sentence. *See id.* Consequently, Judge Shapiro suspended Butch's term of imprisonment on Count II, and reduced the sentence on Count II to five years probation, to run concurrently with his probation on Counts II and III. *See id.*

After Butch violated the terms of his probation, on September 19, 1989, Judge Shapiro resentenced Butch, requiring that he continue on probation, provided he serve a one-year term in the Greater Philadelphia Corrections Center. *See id.* Be-

cause Butch was already serving a custodial sentence in the Pennsylvania state correctional system, *see* Section III.C *infra*, however, he was never confined under Judge Shapiro's September 19, 1989, sentencing order. *See id.* In addition, just ten days after filing the resentencing order, Judge Shapiro vacated that portion of the order requiring Butch to serve a one year term of confinement. *See id.*

After his release from federal custody on November 4, 1985, Butch was never reconfined as part of the sentence imposed for his 1984 conviction. Rather, Butch remained on probation from November 4, 1985, until the expiration of his probationary sentence on February 22, 1991. *See id.* Therefore, for the purposes of Rule 609(b), the ten-year period began to run on November 4, 1985, the date that Butch was "released from the confinement imposed for [his 1984] conviction." *See* Fed. R. Ev, 609(b); *see also* 6 *Weinstein's Federal Evidence* § 609.07[3]; *Daniel*, 957 F.2d at 168. Accordingly, the ten year time limit expired on November 5, 1995.

Because Butch's 1984 federal conviction falls outside the ten-year time period, it is presumptively inadmissible unless the Government can demonstrate that exceptional circumstances warrant the conviction's admission into evidence to impeach Butch's testimony should he testify. *See* Section III.A *supra.* The Government's attempt to meet its burden of demonstrating the admissibility of Butch's 1984 federal conviction consists of one sentence: "[It] should be admitted under Rule [609(b)] even if [it is] not within the ten year time period." *See* Gov. 609 Brief at 2.

It hardly bears stating that this one conclusory sentence by the Government falls woefully short of satisfying the stringent standard of Rule 609(b). *See Pritchard*, 973 F.2d at 909 (admitting thirteen year old felony conviction only after Government demonstrated "substantial" need). The Government has identified no circumstances establishing that the 1984 federal conviction is probative of Butch's credibili-

ty, not to mention "exceptional circumstances." *See* Fed. R. Ev. 609 (Advisory Committee Note). Therefore, because I find that the Government has failed to meet its burden of persuading the Court that the 1984 federal conviction should be admitted to impeach Butch's credibility, should he testify, the Government's Rule 609 motion *in limine* shall be denied in so far as it seeks admission into evidence of Butch's 1984 federal conviction.

### C. *Butch's 1989 State Conviction*

On May 24, 1989, Butch was "convicted on Pennsylvania state charges for aggravated assault, driving under the influence and failing to comply with his duty to ... render assistance in connection with an accident involving death or injury." *See* Gov. 609 Brief at 1. Butch "was sentenced ... to a jail sentence of between 11½ and 23 months." *Id.* Butch "acknowledges that the [1989] State conviction[ ] fall[s] within the ten year time frame" of Rule 609. *See* Def. 609 Brief at 3. Therefore, in determining the admissibility of Butch's 1989 state conviction under Rule 609(a)(1), I must consider whether "the probative value of the evidence outweighs its prejudicial effect to the defendant." *Bedford*, 671 F.2d at 761.

Although once again the Government's showing is slight, I conclude that the probative value of the 1989 state conviction outweighs its prejudicial effect to the defendant. Should Butch take the stand, like all witnesses, he will place his credibility in issue. *Beros*, 833 F.2d at 463–64. In this case, the testimony of Fronick and Manning regarding Butch's participation in the alleged conspiracy will be central to the Government's case. The Government has proffered that both Fronick and Manning will testify to Butch's central role in the alleged conspiracy. *See* Gov. 404 & 608 Briefs. Should Butch take the stand, his testimony will almost certainly differ from the testimony of these two Government witnesses. In cross-examining Butch, should he choose to testify, the

Government must be permitted to challenge Butch's credibility, and thereby the weight of his testimony.

Contrary to defense counsel's characterizations, Butch's 1989 state conviction is particularly relevant to his credibility. *See* Def. 609 Brief at 9. The fact that Butch was convicted of, among other things, leaving the scene of an accident involving a serious injury, which he caused, is probative of Butch's efforts to avoid responsibility for his criminal acts. This goes directly to the heart of Butch's credibility, should he choose to testify in his own defense.

In addition, to minimize the prejudice to Butch, if any, at counsel's request, the Court will instruct the jury:

> You have been told that Mr. Butch was found guilty in 1989 of driving under the influence, aggravated assault, and failing to comply with his duty to render assistance in connection with an accident involving serious bodily injury. The conviction has been brought to your attention only because you may wish to consider it when you decide, as with any witness, how much you will believe of his testimony in this trial. The fact that the defendant was found guilty of another crime does not mean that he committed this crime, and you must not use this previous conviction as proof of the crime charged in this case. You may find him guilty of this crime charge in the Indictment only if the Government has proved beyond a reasonable doubt that he committed it.

*See* 6 *Weinstein's Federal Evidence* § 609.04[2][f] (quoting Federal Judicial Center, *Pattern Criminal Jury Instruction*, No. 41 (1987)); *see also* 1 Devitt, et al., *Federal Jury Practice and Instructions* § 11.09 (4th ed).

Therefore, I find that the probative value of Butch's 1989 state conviction outweighs its prejudicial effect. Accordingly, in so far as the Government seeks to admit evidence of the 1989 state conviction to impeach Butch's credibility, should he choose to testify, the Government's Rule 609 motion *in limine* shall be granted.

## IV. CONCLUSION

For the reasons set forth above, the Government's motion to admit evidence of the January and early May, 1998, events as intrinsic to the conspiracy charged in the Indictment is denied. The Government's Rule 404(b) motion as to this evidence is granted, and the testimony of Manning regarding the events of January and early May, 1998, shall be admitted into evidence at trial for the limited purpose of establishing the background of the conspiracy charged in the Indictment. In addition, the Government's Rule 608(b) motion seeking to exclude evidence of Fronick's prior false testimony is denied. Finally, the Government's Rule 609 motion to admit Butch's 1984 federal and 1989 state convictions into evidence for the purpose of impeaching Butch's credibility, should he choose to testify, is granted in part and denied in part. The Government shall be permitted to impeach Butch's credibility using the his 1989 state conviction. In all other respects, the Government's Rule 609 motion is denied.