**UNITED STATES of America**

v.

**James V. DeLAURENTIS.**

**Criminal No. 99–431.**

United States District Court, D. New Jersey.

Jan. 27, 2000.

Opinion on Denial of Reargument Feb. 10, 2000.

Robert J. Cleary, U.S. Attorney, District of New Jersey, Mary A. Futcher, Assistant U.S. Attorney, Camden, NJ, for U.S.

Louis M. Barbone, Jacobs & Barbone, P.A., A Professional Corp., Atlantic City, NJ, for Defendant, James V. DeLaurentis.

## AMENDED OPINION

ORLOFSKY, District Judge.

This case presents this Court with the first opportunity to apply the Third Circuit's recent decision in *United States v. Zwick*, 199 F.3d 672 (3d Cir.1999). In *Zwick*, the Third Circuit interpreted 18 U.S.C. § 666, which makes "bribe-taking" by local government officials a federal offense. This statute applies where local government entities receive $10,000 or more in federal grant money. In *Zwick*, the Third Circuit held that local government officials can be prosecuted under 18 U.S.C. § 666 only if some connection exists between the conduct with which the official is charged and the federal funds received by the government entity for which he or she works. *See Zwick*, 199 F.3d at 686–87.

In this case, James V. DeLaurentis ("DeLaurentis"), the Supervising Detective of the Hammonton Police Department in Hammonton, N.J., is charged with multiple

counts of extortion and bribery. DeLaurentis has moved to dismiss Counts Two and Six of the indictment, which allege violations of 18 U.S.C. § 666, on the ground that a sufficient connection did not exist between the bribes he allegedly accepted and the federal grant money received by the Hammonton Police Department in the year in which the bribes were purportedly paid to him. DeLaurentis also moves to compel disclosure of the grand jury proceedings in this case because he contends that such disclosure is necessary to determine whether the grand jury was presented with sufficient evidence to determine whether a connection existed between DeLaurentis's alleged conduct and the federal grant money received by the Hammonton Police Department. Construing *Zwick,* I find that a sufficient connection did not exist between the bribes DeLaurentis allegedly received and the federal grant money given to the Hammonton Police Department. Accordingly, I shall grant DeLaurentis's motion to dismiss Counts Two and Six of the indictment which charge violations of 18 U.S.C. § 666. In light of my dismissal of these Counts, I find that DeLaurentis's motion to compel

disclosure of the grand jury proceedings in this case is now moot. Accordingly, I shall deny DeLaurentis's motion to compel disclosure of the grand jury transcripts.

The Government also moves *in limine* to admit certain evidence of bad acts by DeLaurentis. For the reasons set forth below, I shall grant the Government's motion in part and deny it in part.

## I. Factual and Procedural History

On July 27, 1999, DeLaurentis was indicted on four counts of extortion in violation of 18 U.S.C. § 1951 [1] and two counts of soliciting and accepting bribes in violation of 18 U.S.C. § 666.[2] *See* Indictment (filed July 27, 1999). The allegations that form the basis of this indictment stem from four separate incidents, each involving the Choris Bar—a local Hammonton watering hole.

The first incident relates to an exchange of money for influence. The Government claims that DeLaurentis solicited and received $5,000 from the owner of the Choris Bar in exchange for his help in obtaining a renewal of the bar's liquor license. *See* Indictment, Cts. One–Two; Criminal

---

1. This section provides, in relevant part:
 (a) Whoever in any way ... affects commerce ... by robbery or extortion ... shall be fined under this title or imprisoned not more than twenty years, or both.
 (b) As used in this section—
 \* \* \* \* \* \*
 (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
 18 U.S.C.A. § 1951 (West Supp.1999).

2. This section provides, in pertinent part:
 (a) Whoever, if the circumstances described in subsection
 (b) of this section exists—
 (1) being an agent of an organization, or of a state, local, or Indian tribal government, or any agency thereof—
 (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to use of any person other than the rightful owner or intentionally misapplies, property that—
 (i) is valued at $5,000 or more, and

(ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or
(B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;
shall be fined under this title, imprisoned not more than 10 years, or both.
(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.
18 U.S.C.A. § 666 (West Supp.1999).

Compl., Attach. B (filed June 17, 1999). The Government alleges that when the bar applied to the Mayor of Hammonton and the Hammonton Town Council to have its liquor license renewed in July, 1995, the Mayor and the Town Council denied the bar's application based on reports that the bar served alcohol to minors. *See* Criminal Compl., Attach. B. The Government contends that DeLaurentis then made an offer to the owner of the Choris Bar to intercede with Hammonton officials on the bar's behalf in exchange for $5,000. *See id.* The Government maintains that the owner of the Choris Bar subsequently paid DeLaurentis the $5,000 and that DeLaurentis, having accepted the money, wrote a letter to Hammonton officials urging that the officials reach a settlement with the owner of the Choris Bar. *See id.* The Government states that the bar's liquor license was subsequently renewed. *See id.*

This was not the last time that DeLaurentis sold influence for cash, according to the Government. The Government charges that on a separate occasion—after a food vendor on the premises of the Choris Bar was issued a citation for serving food without the requisite license—the owner of the bar paid DeLaurentis an estimated $1,000 to intervene with Hammonton officials on behalf of the vendor. *See* Indictment, Ct. Four; Criminal Compl., Attach. B. It is alleged that although the vendor was subsequently fined, the vendor did not lose his license. *See* Criminal Compl., Attach. B.

The Government further alleges that DeLaurentis not only sold influence for cash, but also extracted money from the owner of the Choris Bar by making threats. Specifically, the Government maintains that DeLaurentis elicited a $2,000 pay-off from the owner of the Choris Bar by threatening to file a false police report. *See* Indictment, Ct. Three; Criminal Compl., Attach. B. According to the Government, DeLaurentis arrested an employee of the Choris Bar on July 11, 1996, for selling drugs. *See* Criminal Compl.,

Attach. B. The employee had been selling drugs out of his own home. *See id.* The Government contends that DeLaurentis nevertheless approached the owner of the Choris Bar and threatened to file a police report stating that the arrested employee had been selling drugs from the bar. *See id.* The Government asserts that because such a report of drug sales at the bar would adversely affect the status of the bar's liquor license, the owner of the Choris Bar paid DeLaurentis approximately $2,000 to prevent him from filing the false police report. *See id.*

In a later, unrelated incident, the Government alleges that DeLaurentis threatened to inform Hammonton officials about various wrongdoings at the Bar and received approximately $6,000 from the owner of the Choris Bar for not acting on the threats. *See* Indictment Cts. Five–Six; Criminal Compl., Attach. B.

On October 15, 1999, DeLaurentis filed a motion to dismiss Counts Two and Six of the indictment alleging violations of 18 U.S.C. § 666 and to compel disclosure of the grand jury proceedings in this case. *See* Notice of Mot. of DeLaurentis (filed Oct. 15, 1999). Counts Two and Six concern the alleged receipt of $5,000 by DeLaurentis for his role in securing the renewal of the Choris Bar's liquor license and the alleged receipt of $6,000 by DeLaurentis for abandoning his threat to report the Choris Bar for various wrongdoings. *See id.;* Indictment, Cts. Two, Six. DeLaurentis moves to compel disclosure of the grand jury proceedings on the theory that such disclosure will reveal whether or not the Government presented sufficient evidence to the grand jury to demonstrate that a connection existed between the federal money received by Hammonton and the bribe money allegedly accepted by DeLaurentis. *See* Def.'s Br. Supp. Pre–Trial Mots. at 9 (Received Oct. 15, 1999). On the same day, the Government filed a motion to admit evidence concerning other bad acts by Defendant DeLaurentis. *See* Notice of Mot. of Government (filed Oct.

15, 1999). These motions are currently before the Court. I have jurisdiction in this matter under 18 U.S.C. § 3231.[3]

## II. Discussion

### A. DeLaurentis's Motion to Dismiss Counts Two and Six

DeLaurentis moves to dismiss Counts Two and Six of the indictment alleging violations of 18 U.S.C. § 666. Among other things, 18 U.S.C. § 666 makes it unlawful for an agent of a local government which receives $10,000 or more in federal funding to accept something of value worth $5,000 or more with the intent to be influenced or rewarded "in connection with" any business of such government. The dispute between DeLaurentis and the Government revolves around the meaning of the language "in connection with" contained in 18 U.S.C. § 666. DeLaurentis argues that there must be some connection between the offense committed by a local government actor and the federal funding received by the government entity for which he or she works to prove a violation of this statute. See Def.'s Br. Supp. Pre–Trial Mots. at 6–9. DeLaurentis asserts that no such connection existed in this case. See id. at 6, 8–9. The Government, on the other hand, interprets the statute's "in connection with" language to mean that no connection needs to be established between the offense and the funding and that Counts Two and Six of the indictment should survive DeLaurentis's motion to dismiss. See Government's Resp. at 5–9 (received Nov. 3, 1999). In the alternative, the Government argues that if such a connection is required, a sufficient connection existed in this case for the charges to go forward. See id. at 10–12.

### 1. The Zwick Decision

The Third Circuit recently considered the issue of whether 18 U.S.C. § 666 requires a connection to be established between federal funds allocated to a local government entity and a bribe received by an official of that entity in United States v. Zwick, 199 F.3d 672 (3d Cir.1999).[4] In Zwick, the defendant (Zwick) was an elected member of Ross Township Board of Commissioners, the governing body of Ross Township, Pennsylvania. See id. at 676. He was convicted under 18 U.S.C. § 666 for receiving bribes from building developers in exchange for helping them obtain sewer access and use permits from the Township and for enabling a landscaper to obtain a contract with the Township. See id. at 676–79. During the period in which Zwick solicited these bribes, Ross Township received federal funds that were used for emergency snow removal and as part of a program to prevent stream bank erosion. See id. at 687–88.

The Third Circuit vacated Zwick's conviction, ruling that a connection must be established between a government official's offense conduct and federal funds received by the government entity for which he or she works for a prosecution under 18 U.S.C. § 666 to be successful. See id. at 686–87. The court held that an insufficient connection existed between the federal funds used by Ross Township for snow removal and to combat stream bank erosion and the bribes received by Zwick in exchange for sewer access, use permits, and landscaping contracts. See id. at 687–88. In reaching this conclusion, the Third Circuit noted that although Congress in-

3. This section provides, in relevant part: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231 (1994).

4. Neither DeLaurentis nor the Government had the benefit of the Third Circuit's decision in Zwick. Their briefs were submitted to this Court before Zwick was decided. Neverthe-

less, DeLaurentis and the Government anticipated the discussion in Zwick with considerable prescience. Both sides considered all of the case law and legal arguments discussed in the opinion. Consequently, I found it unnecessary to require the parties to submit supplemental briefs on the effect of the Zwick decision on this case.

tended 18 U.S.C. § 666 to broaden the reach of federal power to combat bribery—the reach of the federal anti-bribery statute that predated 18 U.S.C. § 666 was limited by tracing requirements—the ultimate objective of 18 U.S.C. § 666 was to protect the integrity of federal funds. *See id.* at 683–86. "The goal [of 18 U.S.C. § 666] was to overcome impediments to reaching actions in which there was a federal interest, not to federalize crimes in which a federal interest was lacking." *Id.* at 683–84. Absent a clear congressional directive that 18 U.S.C. § 666 was enacted to redress all bribery by officials of local governments which receive some federal aid, the Third Circuit held that some connection between the bribe paid and the federal funds received had to be established. *See id.* at 682–83, 686–87.

The Third Circuit engaged in an extensive review of the relevant case law. Several courts across the country had interpreted Congress's intent to broaden federal bribery-fighting powers to mean that a connection between the bribe money taken and federal funds received need not be established. *See id.* at 679–80, 681–82. Other courts, however, found that a lack of such connection raised federalism concerns, with some courts finding that it would be unconstitutional for federal bribery prosecutions to proceed against local government officials where the officials' conduct was unconnected to the federal funds received. *See id.* at 679–682. In *Salinas v. United States,* 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), the Supreme Court held that a successful prosecution under 18 U.S.C. § 666 did not depend on a demonstration that federal funds were actually involved in or affected by an alleged act of bribery. *See Zwick,* at 680–81 (citing *Salinas,* 522 U.S. 52, 118 S.Ct. at 472–73). The Court, however, left open the question of whether some other connection between federal funds and the act of bribery needed to be shown because any such connection would obviously have been met under the facts of that case: A local sher-

iff accepted bribes concerning a federal prisoner housed in a local jail pursuant to a federal program. *See id.* (citing *Salinas,* 522 U.S. 52, 118 S.Ct. at 474–75). The Third Circuit ultimately sided with those courts requiring that a connection be shown, concluding that the balance of federal and state powers would be threatened by allowing prosecutions under 18 U.S.C. § 666 to proceed where no connection existed between a bribe accepted by a government official and the federal funds received by the government entity for which that official worked. *See id.* at 687–88. Acts of bribery addressed by state statute, concerning matters of local concern, and implicating a limited federal interest would be criminalized under federal law otherwise, and the Third Circuit was unwilling to construe 18 U.S.C. § 666 in a way that held such potential to encroach on the police powers of local governments or stretch Congress's authority under the Spending Clause of the Constitution so thinly. *See id.*

Finally, the Third Circuit's decision was guided by canons of statutory interpretation. Finding that ambiguity in the language of criminal statutes should be resolved in favor of defendants and should be construed in a way that avoids constitutional concerns and that statutes should not be interpreted in manner that significantly alters the federal-state balance absent clear congressional intent, the Third Circuit concluded: "We hold that S 666 requires that the Government prove a federal interest is implicated by the defendant's offense conduct." *Id.*

In sum, the Third Circuit held that although the adoption of 18 U.S.C. § 666 signaled the end to tracing requirements in federal bribery prosecutions and that *Salinas* eliminated any argument that federal money must actually be involved in or affected by a bribe that is the subject of federal prosecution, some connection must still be established between an act of bribery by a local official and the federal funds

that are prerequisite to a prosecution under 18 U.S.C. § 666.

### 2. *The Application of Zwick to this Case*

■ · In light of the Third Circuit's reasoning in *Zwick*, I find that a sufficient connection does not exist between the bribes allegedly accepted by DeLaurentis in this case and the federal funds received by the Hammonton Police Department during the period of the alleged bribe-taking. In *Zwick*, the Third Circuit offered guidance as to how the holding in *Zwick* should be applied in future cases:

> Given that the Supreme Court found a sufficient federal connection existed in Salinas, we surmise that a highly attenuated implication of a federal interest will suffice for purposes of § 666. We can conceive of several ways in which the government could prove a federal interest in a § 666 in light of this threshold. The amount of federal funds could provide the requisite federal implication, even if the purpose· of those funds has no explicit relationship to the subject of the bribe. If, for example, in a given year, the greater part of a township's budget came from federal funds, bribery of a township agent for any purpose might be said to implicate federal interests. Absent that situation, the offense conduct would have to somehow implicate a particular substantive federal interest, as the Supreme Court found it did in Salinas, where federal funds were being provided to house federal prisoners in local prisons.

*See Zwick*, 199 F.3d at 687–88. In other words, the Government may· prosecute a local government official when the majority of the resources of the government entity for which he or she works is supplied by the federal government. Otherwise, the subject of the bribe must relate in some way to the purpose for which the local government entity received federal funding. A "substantive federal interest" must be implicated.

No evidence has been introduced in this case to indicate that a majority of the Hammonton Police Department's budget is derived from the federal government. Consequently, this case falls into that category of cases that requires a showing of a "substantive federal interest." The only federal funds the Hammonton Police Department received during the period of DeLaurentis's alleged bribe-taking is a three-year, ·$25,000–per–year grant received by the police department to hire one additional police officer. *See* Def.'s Br. Supp. Pre–Trial Mots., Exs. E, F, G. The question that must be addressed, therefore, is whether the federal interest implicated by this grant is sufficiently related to the bribes DeLaurentis allegedly accepted.

On this score, guidance can be found in *Zwick* as well as several cases the Third Circuit cited in support of its holding in that case. In *Zwick*, the Third Circuit held that federal funds provided for emergency snow removal and to combat stream bank erosion bore "no obvious connection to Zwick's offense conduct, which involved sewer access, use permits and landscaping performance bonds." *Zwick*, 199 F.3d at 687–88. In *United States v. Frega*, 933 F.Supp. 1536, 1543 (S.D.Cal.1996), the court dismissed bribery charges brought against state court judges under 18 U.S.C. § 666 where no allegation had been made that federal funds were corruptly administered. The court stated:

> Of course, state court judges could be subject to § 666 in certain circumstances. For example, if the state court system received federal funding for the purpose of appointing counsel in death penalty habeas proceedings, and a state court judge accepted a bribe in exchange for appointing a particular attorney as habeas counsel, § 666 would clearly be implicated, even if the actual funds used to pay counsel were state funds.

*Id.* at 1542–43. In *United States v. Santopietro*, 166 F.3d 88, 93 (2d Cir.1999), the

Second Circuit found that a "threat to the integrity and proper operation of [a] federal program" existed where the Mayor of Waterbury, Connecticut, accepted bribes from real estate developers in exchange for his influence over Waterbury agencies responsible for administering federal funding for urban development and renewal. Finally, in *Salinas,* the Supreme Court ruled that a prosecution under 18 U.S.C. § 666 was permissible where a county sheriff was accused of accepting a bribe from a federal prisoner housed in a county jail pursuant to federal money and a federal program. *See Salinas,* 522 U.S. 52, 118 S.Ct. at 475.

In this case, the federal grant the Hammonton Police Department received during the period of DeLaurentis's alleged bribe-taking was awarded as part of the federal government's "Cops Fast" program, an initiative begun in 1994 by the Clinton administration to place 100,000 additional police officers on America's streets. *See* Susan Steinberg, *2 Cities Ask U.S. for Police Funds,* L.A. Times, Dec. 22, 1994, at J3; Def.'s Br. Supp. Pre–Trial Mots., Exs. E, F, G. This program was started in part to encourage community policing by local governments. *See* Susan Steinberg, *2 Cities Ask U.S. for Police Funds,* L.A. Times, Dec. 22, 1994, at J3; Def.'s Br. Supp. Pre–Trial Mots., Exs. E, F, G. The bribes DeLaurentis allegedly received, however, were paid in an attempt by the Choris Bar to retain its license to serve alcohol. There is no "obvious connection" between the very general purposes for which the Hammonton police received the federal grant money and the specific purposes for which DeLaurentis may have received the bribes. Certainly, any connection present in this case is more remote than the connections found in *Santopietro,* where the federal funding received and the bribes accepted both concerned real estate development, and *Salinas,* where federal funding was devoted to housing federal prison-

ers in a local jail and where one of the federal prisoners was accused of paying a bribe. I am hard-pressed to find that a "substantive federal interest" in the regulation of bar licensing is implicated by a grant of federal money to hire additional police officers and encourage community policing.

Indeed, a similar conclusion was reached by another District Court addressing similar facts. In *United States v. McCormack,* 31 F.Supp.2d 176, 189 (D.Mass.1998), the District Court dismissed an indictment charging the defendant with bribing a police officer in the hope of inducing the police officer to ignore the defendant's drug-dealing activities.[5] The police department in that case received a Community Revitalization Grant, two Community Policing Grants, a D.A.R.E. Grant, a Domestic Violence Grant, and a Housing Authority Grant. *See id.* at 178. The District Court concluded that there was no nexus between bribes paid by the defendant and the receipt of federal funds in that case. *See id.* at 186, 189. According to the District Court, a bribe paid to prevent a criminal investigation of state crimes was unrelated to funding for community policing and other types of generalized federal funding. *See id.* at 189. I agree with the *McCormack* court's reasoning and hold that in this case there is no substantive connection between the bribes solicited by DeLaurentis—bribes paid to prevent state action against the bar's license—and the federal funds received by the Hammonton Police Department for the hiring of an additional police officer and stepped-up community policing programs.

This conclusion is consistent with the underlying principles of the *Zwick* decision and of the cases upon which that decision rested. If DeLaurentis could be tried under 18 U.S.C. § 666 on the facts of this case, it would be hard to think of a circum-

---

**5.** The Third Circuit relied in part on *McCormack* in reaching its holding in *Zwick. See* *Zwick,* 199 F.3d at 686–87.

stance in which a police officer receiving a bribe could not be tried under this statute. Police forces across New Jersey receive federal funding for purposes as general as those involved in this case. To hold that police officers in those departments are subject to prosecution under 18 U.S.C. § 666 whenever implicated in bribery of any sort would be to jeopardize the balance of state and federal powers in matters of law enforcement, especially where New Jersey has a statute that criminalizes the type of bribery alleged in this case. *See* N.J.S.A. 2C:27–2. Like many of the courts who have considered this issue before me, I will not permit this outcome absent a clear directive from the Congress that it was its intent in enacting 18 U.S.C. § 666 to create a general, federal antibribery statute.

### 3. *Failure to Allege a Sufficient Connection Warrants Dismissal*

Having found that the requisite connection did not exist between the bribes DeLaurentis allegedly accepted and the federal funds the Hammonton Police Department received, it is appropriate to dismiss Counts Two and Six of the indictment. While it is generally true that an indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charges against him, and enables him to plead guilty or not guilty, and that simply tracking the language of a criminal statute will usually suffice to meet this modest threshold, *see Hamling . v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), Rule 12(b) of the Federal Rules of Criminal Procedure [6] permits courts to dismiss indictments before trial where, as a matter of law, it would be inappropriate to allow prosecution on those charges to proceed. *See United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir.1997); *See also United States v. Cicco*, 938 F.2d 441, 446–47 (3d

Cir.1991) (holding that dismissal of 18 U.S.C. § 666 charges was appropriate under Rule 12(b) where, as a matter of law, 18 U.S.C. § 666 was inapplicable to the conduct charged in the indictment). Accepting all of the Government's factual allegations to be true, 18 U.S.C. § 666 is, as a matter of law, inapplicable to DeLaurentis's actions. In other prosecutions under 18 U.S.C. § 666, other courts have dismissed whole indictments or portions thereof on the ground that a sufficient connection between the defendant's offense conduct and the federal funds received could not be established. *See Frega*, 933 F.Supp. at 1543; *McCormack*, 31 F.Supp.2d at 189. Accordingly, I shall grant DeLaurentis's motion to dismiss Counts Two and Six of the indictment alleging violations of 18 U.S.C. § 666.

Finally, I note that my decision to dismiss Counts Two of Six of the indictment moots DeLaurentis's motion to compel disclosure of the transcripts of the grand jury proceedings in this case, which were desired principally for whatever aid they might provide in establishing that Counts Two and Six of the indictment should not be allowed to proceed. Accordingly, I shall deny DeLaurentis's motion to compel the disclosure of the transcripts.

### B. *The Government's Motion to Admit Bad Acts Evidence*

The Government has moved to admit evidence of bad acts by DeLaurentis. *See* Notice of Mot. of Government. This evidence includes recorded and unrecorded conversations between DeLaurentis and a member of an organized crime family. *See* Mem. Law Supp. Admis. of Evidence at 3–6 (received Oct. 15, 1999). This organized crime member is a cooperating witness who will testify at trial concerning DeLaurentis's alleged schemes to extort

---

**6.** Rule 12(b) provides, in pertinent part: "Any defense, objection, or request which is capable of determination without the trial of the

general issue may be raised before trial by motion." Fed.R.Crim.P. 12(b).

money from the Choris Bar. *See id.* at 13. During these conversations, DeLaurentis allegedly solicited the cooperating witness's aid in extorting money from a liquor store owner, proposed to the cooperating witness a plan to extort money from food vendors, and gave the cooperating witness a photograph of police surveillance equipment (a pole camera) being used to investigate the cooperating witness and his criminal associates. *See id.* at 3–5. The evidence also includes a letter written by DeLaurentis on behalf of a convicted mob associate claiming falsely that the mob associate fulfilled the community service requirement imposed as part of his sentence in the service of the Hammonton Police Department. *See id.* at 6. The Government argues that this evidence is admissible either because it is intrinsic to the offenses charged in the indictment or because it passes muster under Federal Rule of Evidence 404(b), which permits the admission of extrinsic evidence of other bad acts under limited circumstances. *See id.* at 7, 11.

### 1. *Bad Acts Evidence Not Admissible As Intrinsic Evidence*

■ None of the proposed evidence is "intrinsic" to the offenses alleged in the indictment. I have discussed the standard which is applied to determine whether evidence is "intrinsic" or "extrinsic" in a previous opinion. *See United States v. Butch,* 48 F.Supp.2d 453 (D.N.J.1999) (Orlofsky, J.). In *Butch,* I applied the broad definition of "intrinsic" employed by the Fifth Circuit in *United States v. Williams,* 900 F.2d 823 (5th Cir.1990). Under *Williams,* " 'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single

criminal episode' or other acts were 'necessary preliminaries' to the crime charged." *Williams,* 900 F.2d at 825.

■ The charges DeLaurentis currently faces are variations on a common theme: They revolve around various efforts by DeLaurentis to solicit bribes and extort money from the owner of the Choris Bar. That being said, there is no evidence that the photographs of the pole camera and the letter written by DeLaurentis on behalf of an organized crime underling were related in any way to DeLaurentis's designs concerning the Choris Bar. Distinct and distinguishable events, DeLaurentis's delivery of the photographs and writing of the letter were neither "necessary preliminaries" to. nor "inextricably intertwined" with DeLaurentis's efforts to extract money from the owner of this bar. Similarly, DeLaurentis's alleged plan to extort money from the bar's owner was not part of a "single criminal episode" involving DeLaurentis's proposed extortion of a liquor store owner and contemplated extortion of food vendors. The bulk of DeLaurentis's alleged offenses concerning the Choris Bar predated DeLaurentis's alleged schemes regarding the liquor store and the food vendors by six months. *See* Mem. Law Supp. Admis. of Evidence at 1–6. There is no evidence linking the various alleged extortion schemes under the umbrella of a single larger plan or suggesting that they represent anything more than separate and independent acts of extortion. Consequently, the bad-acts evidence the Government seeks to introduce shall not be admitted as intrinsic evidence.

### 2. *Federal Rule of Evidence 404(b)*

■ That being said, evidence of these other acts [7] may still be admissible

---

7. DeLaurentis suggests that evidence of other acts is admissible only if the other acts are unlawful. *See* Def.'s Br. Opp'n Admis. Evidence at 5, 7 (Received Oct. 15, 1999). It is well-established, however, that conduct that is neither criminal nor unlawful may be admissible under Rule 404(b). *See United States v.*

*Rubio–Gonzalez,* 674 F.2d 1067, 1075 (5th Cir.1982); 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 404.20[2][a] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1997).

It is also worth noting, since much of the other-acts evidence in this case happened af-

under Federal Rule of Evidence 404(b). Rule 404(b) provides that:

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed.R.Evid. 404(b). A rule of inclusion rather than exclusion, Rule 404(b) is designed to promote the admission of evidence, but prohibits evidence offered solely to prove a defendant's character or to demonstrate that a defendant has a propensity to commit a crime. *See United States v. Sriyuth,* 98 F.3d 739, 745 (3d Cir.1996); *United States v. Sampson,* 980 F.2d 883, 886–87 (3d Cir.1992); *United States v. Scarfo,* 850 F.2d 1015, 1019 (3d Cir.1988). In other words, evidence of other acts must be probative of a material issue other than character to be admissible. *See Butch,* 48 F.Supp.2d at 457 (quoting *Sriyuth,* 98 F.3d at 745–46). Consequently, before evidence of other bad acts will be admitted, the Government is required to " 'clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed . . . . offenses before, he therefore is more likely to have committed this one.' " *United States v. Morley,* 199 F.3d 129, 137 (3d Cir.1999) (quoting *Sampson,* 980 F.2d at 887). Once the Government has met this burden, " 'the district court must put a chain of inferences into the record, none of which is the inference that the defendant has a propensity to commit [the charged] crime.' " *See id.* (quoting *Sampson,* 980 F.2d at 887). "[T]he obvious dangers inherent in evidence of uncharged bad acts, and the adversarial tendency of the proponents of such evidence to be less than

candid about their motives for offering [such] evidence" makes it critically important that the Government and the district court meet these burdens fully. *See id.* at 139; *See also Sampson,* 980 F.2d at 886 ("Although the Government will hardly admit it, the reasons proffered to admit prior-bad-act evidence may often be a Potemkin, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character"). A four-pronged test governs the admissibility of evidence under Rule 404(b):

> Admissibility under [Federal Rule of Evidence] 404(b) requires: (1) a proper evidentiary purpose; (2) relevance under [Federal Rule of Evidence] 402; (3) a weighing of the probative value of the evidence against its prejudicial effect under [Federal Rule of Evidence] 403; and (4) a limiting instruction concerning the purpose for which the evidence may be used.

*United States v. Mastrangelo,* 172 F.3d 288, 294–95 (3d Cir.1999) (citing *Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)).

Turning to the first prong of this test, I conclude that the Government has articulated a proper purpose for the admission of the bad-acts evidence. The Government claims that the evidence it seeks to introduce is offered for the purpose of "illustrating the relationship between defendant and the [cooperating witness], to corroborate the testimony of the [cooperating witness]" and "to demonstrate that the defendant was not subject to coercion by the [cooperating witness] or entrapment by the government." *See* Mem. Law Supp. Admis. of Evidence at 12–13. It is well-settled that bad-acts evidence is admissible for these purposes. The list of proper purposes included in Rule 404(b) is not exhaustive, *see United States v. Simmons,* 679 F.2d 1042, 1050 (3d Cir.1982); 2 Jack

---

ter the charged offense is alleged to have occurred, that other acts need not have occurred prior in time to be admissible as other-

acts evidence under Rule 404(b). *See* Weinstein & Berger, *supra.*

B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 404.22[6][a] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1997), and courts have found it proper to admit evidence of other acts for the purpose of enhancing a witness's credibility as well as rebutting defense claims of entrapment and coercion. *See United States v. Higham,* 98 F.3d 285, 292 (7th Cir.1996) (finding evidence of predisposition to violence admissible in murder-for-hire trial where entrapment defense was raised); *United States v. Hardwell,* 80 F.3d 1471, 1489 (10th Cir. 1996) (ruling evidence of prior drug distribution admissible to combat entrapment defense raised in drug distribution case); *United States v. Zanabria,* 74 F.3d 590, 592 (5th Cir.1996) (holding court did not abuse its discretion in admitting evidence of prior conviction for possession of cocaine where defendant was charged with possession of cocaine and raised defense of duress); *United States v. Wimberly,* 60 F.3d 281, 285 (7th Cir.1995) (ruling evidence of prior bad act admissible because evidence went to credibility of defendant); *United States v. Hooker,* 997 F.2d 67, 76 (5th Cir.1993) (stating that testimony from informant that he had previously bought drugs from defendant was admissible to rebut defense of entrapment); *United States v. Perez–Garcia,* 904 F.2d 1534, 1544 (11th Cir.1990) (finding admission of prior-bad-acts evidence proper to rebut coercion defense); *United States v. Ward,* 793 F.2d 551, 555 (3d Cir.1986) (ruling evidence of extrinsic acts admissible to show defendants were predisposed to engage in drug distribution scheme); *United States v. O'Leary,* 739 F.2d 135, 136–37 (3d Cir.1984) (finding cooperating witness could testify to prior drug transactions with the defendant, showing the relationship shared by the cooperating witness and the defendant, because the prior crimes were similar and proximate in time); *Simmons,* 679 F.2d at 1050 (ruling that evidence of prior check-forging by defendant was admissible in check-forging prosecution to explain the relationship between defendant and testifying co-conspirator); *United States v. Dansker,* 537 F.2d 40, 58 (3d Cir.1976) (holding evidence of prior embezzlement admissible in bribery trial to demonstrate existence and nature of relationship between defendants and cooperating witness and to substantiate credibility of cooperating witness); *Butch,* 48 F.Supp.2d at 459–60 (holding evidence of prior possession and distribution of controlled substances admissible in controlled substances trial as probative of background relationship between defendant and those testifying).

That being said, "a proponent's incantation of the proper uses of such evidence under the rule does not magically transform inadmissible evidence into admissible evidence." *Morley,* 199 F.3d 129, 133. Proposed other-acts evidence must both be relevant to the purpose for which it is offered and possess a probative value that is not substantially outweighed by any unfair prejudice that may result if the evidence is admitted. *See Mastrangelo,* 172 F.3d at 294–95 (citing *Huddleston,* 485 U.S. at 691–92, 108 S.Ct. 1496). Only one of the four items of evidence proffered by the Government satisfies the remaining prongs of the *Mastrangelo* test.

*(a) The Proposed Extortion of the Liquor Store Owner*

■ Evidence that DeLaurentis solicited the cooperating witness's aid in extorting money from a liquor store owner is clearly admissible. First, it is relevant. " 'Relevant evidence' means evidence having any tendency to make the existence of a fact that is of consequence to a determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. In this case, evidence of the liquor store extortion scheme makes it more probable that the cooperating witness's testimony regarding the alleged extortion of the Choris Bar is credible. It demonstrates that DeLaurentis and the cooperating witness were familiar with one another in the context of plotting and hatching extortion schemes,

thereby offering an explanation as to why DeLaurentis would reveal plans and events concerning other extortion schemes to the cooperating witness. Furthermore, this evidence makes it more likely that DeLaurentis was neither entrapped nor coerced into extorting money from the Choris Bar. Having attempted to extort money on other occasions, ostensibly of his own initiative and volition, it is less likely that either the Government or the cooperating witness overbore DeLaurentis's will, leading him to extort money from the Choris Bar.

This evidence, moreover, is more probative than it is prejudicial. "Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. *See also Sriyuth*, 98 F.3d at 746. In determining whether the danger of unfair prejudice substantially outweighs the probative value of an item of evidence, "we must assess 'the genuine need for the challenged evidence and balance that necessity against the risk that the information will influence the jury to convict on improper grounds.'" *Sriyuth*, 98 F.3d at 747–48 (quoting *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988)). The need for the evidence is to be considered "'in view of the contested issues and other evidence available to the prosecution, and the strength of the evidence in proving the issue.'" *Id.* at 748 (quoting *United States v. Cook*, 538 F.2d 1000, 1003 (3d Cir.1976)).

There can be little doubt that the evidence of the alleged extortion of the liquor store is necessary to the Government's case. The Government proffers that the cooperating witness has an extensive criminal resume, built in the service of organized crime, and that the cooperating witness will be asked to testify about that history. *See* Mem. Law Supp. Admis. of Evidence at 13. The Government further

indicates that the cooperating witness will recount largely unrecorded conversations with DeLaurentis concerning the Choris Bar because the cooperating witness was not yet cooperating with authorities when many of those conversations occurred. *See id.* The cooperating witness's credibility is bound to be attacked as a result. The possibility that the cooperating witness will be portrayed as a coercive force is also considerable. The Government will clearly need to be able to buttress the credibility of the cooperating witness—the Government's star witness—if it is going to make its case.

There can also be little question that the evidence of the liquor store extortion scheme is particularly probative of the cooperating witness's credibility and the likelihood that DeLaurentis's participation in the extortion of the Choris Bar was entirely volitional. After all, the offenses charged in this case are predicated on conduct that is very similar to DeLaurentis's alleged conduct towards the liquor store. According to the criminal complaint filed in this case, for example, DeLaurentis sent a letter to the owner of the Choris Bar alleging various criminal violations and threatened to send a copy of the letter to Hammonton officials if not paid off. *See* Criminal Compl., Attach. B. According to the Government, the cooperating witness will testify that DeLaurentis sent a letter to the owner of the liquor store alleging various criminal violations and requested that the cooperating witness discuss with the owner of the liquor store a possible "pay-off" before DeLaurentis sent a copy of that same letter to Town of Hammonton officials. *See* Mem. Law Supp. Admis. of Evidence at 3–4. The similarity between the conduct charged in this case and the conduct alleged in DeLaurentis's other acts makes it particularly likely that De-Laurentis's accounts of the Choris Bar extortion schemes are credible because De-Laurentis is more likely to have discussed that extortion scheme with the cooperating witness having had discussed other extor-

tions with the cooperating witness. Likewise, this similarity makes it more probable that DeLaurentis was not coerced or entrapped into extorting money from the Choris Bar because he extorted money from other establishments on other occasions.

Finally, the risk that the introduction of this evidence will give rise to unfair prejudice is low. Ultimately, a jury may conclude as a result of this evidence that DeLaurentis extorted money from the Choris Bar. It will likely not, however, be because the jury inferred from this evidence that DeLaurentis is a bad person and that, as a result, he committed the charged offense. The direct and logical inference to be drawn from this evidence is that the cooperating witness has told the truth about Deluarentis's actions concerning the Choris Bar or that DeLaurentis was not entrapped or coerced. This evidence fits into a chain of logical inferences, no link of which is that merely because DeLaurentis has committed other bad acts, he is therefore more likely to have committed the charged offense. *See Morley,* 199 F.3d 129, 137 (citing *Sampson,* 980 F.2d at 887). It goes to a material issue other than character. *See Butch,* 48 F.Supp.2d at 457 (quoting *Sriyuth,* 98 F.3d at 745–46).

Because evidence of DeLaurentis's alleged extortion of the liquor store is offered for a proper purpose, is relevant, and is more probative than it is prejudicial, I shall admit it into evidence. Pursuant to my obligation under *Mastrangelo,* 172 F.3d at 294–95 (citing *Huddleston,* 485 U.S. at 691–92, 108 S.Ct. 1496), I shall give the following limiting instruction to the jury to explain the proper purposes for which this evidence may be considered:

> Evidence that Mr. DeLaurentis was involved in uncharged but potentially unlawful activities with the cooperating witness in March and April, 1997, has been admitted into evidence. You may consider this evidence only as background to the offense charged in the Indictment, as evidence of Mr. DeLaurentis's and the cooperating witness's relationship, and as evidence of the cooperating witness's credibility. You may not, however, consider this evidence of DeLaurentis's involvement in uncharged but potentially unlawful activities in March and April, 1997, in deciding whether or not the Government has proven Mr. DeLaurentis's guilt beyond a reasonable doubt for the offense charged in the Indictment. For this limited purpose for which this evidence has been received, you may give it such weight as you feel it deserves. You may not, however, consider this evidence for any other purpose.[8]

*See* 1 Devitt, et al., Federal Jury Practice and Instructions § 11.09 (4th ed). Ultimately, then, I shall grant the Government's motion to admit other-acts evidence insofar as it pertains to evidence of DeLaurentis's alleged extortion of the liquor store.

#### (b) The Proposed Extortion of the Food Vendors

■ Unlike the evidence of DeLaurentis's efforts to extort money from the liquor store, Delaurentis's proposal to extort money from food vendors presents relevance problems. "Relevance is not an inherent characteristic, *Huddleston,* 485 U.S. at 689, 108 S.Ct. 1496," nor are other acts intrinsically relevant to the proper purposes for which they may be offered to prove. *Sampson,* 980 F.2d at 888, *quoted in Morley,* 199 F.3d 129, 133. The Government hopes that by showing how DeLaurentis and the confidential witness collaborated in other criminal enterprises a

---

8. In the event that DeLaurentis raises an entrapment or coercion defense, this limiting instruction will be amended to reflect that the evidence that DeLaurentis was involved in uncharged but potentially unlawful activities with the cooperating witness in March and April, 1997, may be considered as evidence that DeLaurentis was not entrapped by the Government or coerced by the cooperating witness.

jury will be persuaded that the confidential witness's account of how he and DeLaurentis extorted money from the Choris Bar is a credible one. Evidence of the extortion of the food vendors is only relevant, however, if the extortion of the food vendors actually took place. Put differently, the confidential witness's credibility can be enhanced by evidence of other collaborations only if the collaborations occurred. Likewise, insofar as this evidence is introduced to persuade the jury that DeLaurentis was not entrapped or coerced into extorting money from the Choris Bar— because DeLaurentis initiated the scheme to extort money from the food vendors—it is relevant only if an actual scheme to extort money from the food vendors was initiated.

In *Huddleston*, the Supreme Court addressed the question of "whether the district court must itself make a preliminary finding of fact that the government has proved the 'other act' by a preponderance of the evidence before it submits the evidence to the jury." *Huddleston*, 485 U.S. at 682, 108 S.Ct. 1496. The Court answered the question in the negative but added that "[t]his is not to say, however, that the government may parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Id.* at 689, 108 S.Ct. 1496. The Court indicated that Rule 104(b) of the Federal Rules of Evidence addresses circumstances where the relevance of evidence is conditioned on a fact. *See Huddleston*, 485 U.S. at 689, 108 S.Ct. 1496. That rule provides: "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall

admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Fed.R.Evid. 104(b). In determining whether the Government has introduced sufficient evidence to meet the standard established by Rule 104(b):

> the trial court neither weighs credibility nor makes a finding that the government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence.

*Huddleston*, 485 U.S. at 690, 108 S.Ct. 1496.

At this juncture, I hold that the jury could not reasonably find that DeLaurentis engaged in a scheme to extort money from food vendors. According to the Government, the confidential witness will testify that DeLaurentis proposed the extortion of the food vendors, but the Government has offered no evidence that DeLaurentis's comments resulted in any action. There is no evidence for the jury to sustain the conclusion that DeLaurentis's comments amounted to anything more than idle chatter. Consequently, evidence that DeLaurentis extorted money from food vendors is inadmissible. Having concluded that this evidence is not relevant, I find it is not necessary for me to perform the balancing test provided for by Federal Rule of Evidence 403. Accordingly, I shall deny the Government's motion to admit bad acts evidence insofar as that motion pertains to evidence of the extortion of the food vendors.[9]

9. It is worth noting the difference between the evidence proffered by the Government concerning the extortion of the liquor store, which presents no relevance problem, and the evidence proffered regarding the proposed extortion of the food vendors, which does present a relevance problem. In the case of the liquor store extortion scheme, the Government has indicated that it will introduce evidence that is more substantial than

mere puffing. The Government claims that the cooperating witness will testify that DeLaurentis admitted to him that he had begun a scheme to extort money from the liquor store and that he had sent a letter to the store to that end. *See* Mem. Law Supp. Admis. of Evidence at 3–4. Moreover, the cooperating witness will testify that DeLaurentis actually solicited his aid in the extortion of the liquor store. *See id.* at 3–4. In the case of the

### (c) The Photographs of the Pole Camera and the Letter Written on Behalf of a Member of Organized Crime

■ The Government's evidence regarding the photographs of the pole camera and the letter written on behalf of an organized crime associate also present relevance problems. The relevance of this evidence is limited by how different it is from the alleged conduct upon which the charged offenses are predicated. That DeLaurentis wrote a letter to a probation officer on behalf of a mob underling or gave the cooperating witness photographs of a pole camera does not necessarily make it more likely that DeLaurentis would divulge to the cooperating witness details of an extortion plot or invite the cooperating witness to participate in such a scheme. Certainly, evidence concerning the extortion of the liquor store is more probative of the credibility of the cooperating witness in recounting events concerning the charged extortion scheme. Likewise, the evidence regarding the letter and the photographs does not make it more likely that DeLaurentis was not entrapped or coerced. That DeLaurentis wrote the letter or provided the cooperating witness with the photographs does not demonstrate that DeLaurentis was predisposed in any way to committing acts of extortion.

When evidence of the letter and the photographs is evaluated under Rule 403, it becomes clear that this evidence is inadmissible. As already mentioned, this evidence has limited probative value. Moreover, in considering the Government's need for this evidence, *see Sriyuth*, 98 F.3d at 748 (quoting *Cook*, 538 F.2d at 1003), I conclude that this need is limited by my admission of the more probative and more relevant evidence concerning the extortion of the liquor store. *See United States v. Hans*, 738 F.2d 88, 95 (3d Cir. 1984) (holding that evidence of participation in past robberies is prejudicial and cumulative where sufficient evidence to establish relationship· between witness and defendant was available to the prosecutor). Finally, the risk that the introduction of this evidence will give rise to unfair prejudice is high. Because the chain of inference from this evidence to the credibility of the cooperating witness and the questions of coercion or entrapment in this case is so weak, chances are considerable that jurors may be tempted to conclude that simply because DeLaurentis has committed some bad acts or has associated with organized crime members generally, he committed the charged offense as well. *See Sriyuth*, 98 F.3d at 748 (stating that the Government's need for other-acts evidence must be weighed against the danger that the jury will "decide that because the accused was the perpetrator of other crimes, he probably committed the crime for which he is on trial as well"). This is precisely the evil or impermissible chain of reasoning that Rule 404(b) was designed to

---

proposed extortion of the food vendors, on the other hand, the Government has merely proffered that DeLaurentis made statements that he would like to extort money from the food vendors. *See id.* at 4–5. While the Government's evidence as to whether or not DeLaurentis tried to extort money from the liquor store is by no means overwhelming, I find that it at least amounts to some evidence, which is more than can be said for the Government's evidence as to whether DeLaurentis tried to extort money from the food vendors. This evidence is certainly sufficient to satisfy the low threshold for admissibility established by the Supreme Court. *See Huddleston*, 485 U.S. at 690, 108 S.Ct. 1496. When considering the other evidence at trial, including evidence of the charged offense, *see*

*United States v. Clarke*, 24 F.3d 257 (D.C.Cir. 1994) (citing *Huddleston*, 485 U.S. at 690–91, 108 S.Ct. 1496), a jury could reasonably find by a preponderance of the evidence that DeLaurentis did in fact attempt to extort money from the liquor store. The same cannot be said about the evidence concerning the proposed extortion of the food vendors.

Because there is some ambiguity as to whether DeLaurentis was successful in extorting money from the liquor store, *see* Mem. Law Supp. Admis. of Evidence at 4–5, it is also worth noting that DeLaurentis need not have succeeded in extorting money from the liquor store for a bad act to have occurred. Merely attempting to extort money would have been a bad act itself.

prevent. *See Morley*, 199 F.3d 129, 133. Consequently, I find that the evidence that DeLaurentis provided the cooperating witness with photographs of the pole camera and that DeLaurentis wrote a letter to a probation officer on behalf of a member of organized crime is inadmissible. Accordingly, I shall deny the Government's motion to admit other-acts evidence insofar as it pertains to the evidence concerning the photographs and the letter.[10]

## III. Conclusion

For the reasons set forth above, I shall grant the motion of the Defendant, James V. DeLaurentis, to dismiss Counts Two and Six of the indictment against him. These Counts allege violations of 18 U.S.C. § 666, which criminalizes bribe-taking by officials of local governments which receive federal funding. The Third Circuit, in its recent decision in *United States v. Zwick*, 199 F.3d 672 (3d Cir.1999), has concluded that a connection must exist between funds received by a local government entity and bribes accepted by officials of that entity for prosecutions under 18 U.S.C. § 666 to be maintained. Because a sufficient connection did not exist in this case between the bribes DeLaurentis's allegedly accepted and the federal grant money received by the Hammonton Police Department, I shall dismiss Counts Two and Six of the indictment. Because I shall dismiss these Counts of the indictment, I shall deny DeLaurentis's motion to compel disclosure of the grand jury transcripts in this case, requested by DeLaurentis as an aid in his effort to obtain dismissal of Counts Two and Six, finding that this motion is moot in

light of my decision to dismiss those Counts.

Moreover, I shall grant in part and deny in part the Government's motion for the admission of certain evidence. I find that none of the other-act evidence the Government has proffered is intrinsic to the crimes charged, and the evidence shall not be admitted on this ground. I do find, however, that evidence concerning DeLaurentis's attempted extortion of a liquor store is admissible because it is offered for proper purposes, is relevant, and is not substantially more prejudicial than it is probative. Consequently, I shall grant the Government's motion to admit certain evidence insofar as it concerns evidence of DeLaurentis's alleged extortion of the liquor store.

I shall deny the Government's motion to admit certain evidence as it concerns evidence of DeLaurentis's proposed extortion of the food vendors, the photographs of the pole camera, and the letter written by DeLaurentis on behalf of a member of organized crime. I find that evidence concerning the extortion of the food vendors is irrelevant and that the admission of the evidence concerning the photographs and the letter would be more prejudicial than probative.

### OPINION ON MOTION FOR REARGUMENT

On January 27, 2000, I filed an Opinion in which I dismissed Counts Two and Six of the indictment in this case. *See United States v. DeLaurentis*, No. 99–431, 2000 WL 64895, at *7 (D.N.J. Jan. 27, 2000). These Counts alleged violations of 18 U.S.C. § 666,[1] which makes "bribe-taking"

---

10. Even if this evidence were admissible for the purposes of rebutting an entrapment or coercion defense, I would not admit the evidence until it became clear that DeLaurentis intended to raise such a defense. "The trial court has traditionally exercised the broadest sort of discretion to control the order of proof." *United States v. LeBaron*, 156 F.3d 621, 625 n. 5 (5th Cir.1998) (quoting *Huddleston*, 485 U.S. at 690, 108 S.Ct. 1496). *See also United States v. Colon*, 880 F.2d 650, 660

(2d Cir.1989) (holding that it is proper to wait until close of defense's case before admitting bad acts in order to ascertain whether the defense theory renders the evidence relevant and probative); 2 Weinstein & Berger, *supra*, § 404.22[6][a].

1. This section provides, in pertinent part:
 (a) Whoever, if the circumstances described in subsection (b) of this section exists—

by local government officials a federal offense. In dismissing both Counts, I applied for the first time the Third Circuit's decision in *United States v. Zwick*, 199 F.3d 672 (3d Cir.1999). On February 2, 2000, the Government filed a motion for reargument, requesting that I reconsider my decision to dismiss Counts Two and Six of the indictment. *See* Notice of Mot. (filed Feb. 2, 2000). For the reasons set forth below, the Government's motion for reconsideration is denied.

## I. Discussion

 I dismissed Counts Two and Six of the indictment on the ground that the Government had failed to establish a sufficient connection between the bribes that the Defendant, James V. DeLaurentis ("DeLaurentis"), allegedly accepted and the federal funds received by the Hammonton Police Department, where DeLaurentis served as the Supervising Detective. *See DeLaurentis*, 2000 WL 64895, at *1, *7. The Government alleges

> (1) being an agent of an organization, or of a state, local, or Indian tribal government, or any agency thereof—
> (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to use of any person other than the rightful owner or intentionally misapplies, property that—
> (i) is valued at $5,000 or more, and
> (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or
> (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;
> shall be fined under this title, imprisoned not more than 10 years, or both.
> (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,-000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.
> 18 U.S.C.A. § 666 (West Supp.1999).

that DeLaurentis received bribes from the owner of the Choris Bar, a local Hammonton watering hole, in exchange for persuading the Hammonton Town Council not to strip the owner of his license to serve alcohol. *See id.* at *2. During the time that DeLaurentis was allegedly receiving bribes, the Hammonton Police Department was the beneficiary of a three-year, $75,000 community-policing grant, given to the Hammonton Police Department for the purposes of hiring one additional police officer. *See id.* at *6. I interpreted the Third Circuit's decision in *Zwick* to mean that the Government was required to show that the bribes received by DeLaurentis somehow implicated a substantive federal interest, concluded that the Government had not met this burden, and granted DeLaurentis's motion to dismiss Counts Two and Six of the indictment. *See id.* at *5–7. The Government now seeks to introduce new evidence [2] that it claims establishes a

2. Although I consider this new evidence in denying the Government's motion on the merits, I note that it is generally improper to raise new evidence on a motion for reargument. A motion for reargument "is an extremely limited procedural vehicle," *Resorts Int'l, Inc. v. Greate Bay Hotel & Casino, Inc.*, 830 F.Supp. 826, 831 (D.N.J.1992) (Gerry, J.), and relief requested on a motion for reargument is granted "very sparingly," *Maldonado v. Lucca*, 636 F.Supp. 621, 630 (D.N.J.1986) (Barry, J.). The critical factor a court must consider in deciding whether or not a motion for reargument should be granted is whether the court "overlooked" factual matters or decisions of law that might reasonably have resulted in a different conclusion had they been considered, *Rouse v. Plantier*, 997 F.Supp. 575, 578–79 (D.N.J.1998) (Orlofsky, J.); L. Civ. R. 7.1(g) (made applicable to criminal cases by Local Criminal Rule 1.1). I could not have overlooked factual matters that were not presented to me in the first instance.

That being said, the Government justifies its submission of new evidence on the ground that the Government did not have an opportunity to brief the Third Circuit's decision in *Zwick* before I rendered my decision concerning DeLaurentis's motion to dismiss Counts Two and Six of the indictment. *See* Government's Letter Br. at 1–2 (received Feb. 2,

sufficient connection between the bribes accepted and the federal grant money received. Specifically, the Government contends that the police officer the Hammonton Police Department hired with the community-policing grant money it received has reported to the Choris Bar on four occasions on complaints of, among other things, "public urination," "public intoxication," and "a large group." *See* Government's Letter Br. at 4–5, Exs. H, I, J (received Feb. 2, 2000). The Government argues that if DeLaurentis had not accepted bribes from the owner of the Choris Bar, he would not have persuaded the Hammonton Town Council to allow the bar to retain its liquor license, the bar would have closed, and the federally funded police officer would not have had to report to the Choris Bar. *See id.* at 5–6. According to the Government, the bribes received by DeLaurentis implicate a substantive federal interest in "not allowing the agents of organizations receiving federal funds to waste, divert and dissipate those funds by taking bribes to permit crimes that the federal funds must be used to investigate." *Id.* at 6. Unfortunately, the Government's argument misses the mark.

■ The Third Circuit's decision in *Zwick* requires that the Government demonstrate a more particularized federal interest than the one it asserts here. The holding in *Zwick* is predicated on the con-

cern that the constitutional balance of state and federal powers would be threatened without a requirement that a connection exist between bribes that are the subject of a prosecution under 18 U.S.C. § 666 and the federal funds that are prerequisite to such a prosecution. *See Zwick,* 199 F.3d 672, 682–83, 686–87. The Third Circuit fashioned the "federal interest" test I applied in dismissing Counts Two and Six of the indictment to address this concern. *See id.,* at 686–87. The Third Circuit also offered guidance as to how this test should be applied. The Court held that in circumstances where most of a local government's budget is derived from federal funds, a federal interest will be implicated, "even if the purpose of those funds has no explicit relationship to the subject of the bribe." *Id.,* at 687–88. Absent this circumstance, however, something more is required. The bribe accepted must relate in some way to "a particular substantive federal interest." *Id.*

The result in *Zwick* reveals that "a particular substantive federal interest" will be implicated where there is a relationship between the federal funds received and the bribe accepted. Hence, "a particular substantive federal interest" was not found to exist in *Zwick* because the local government in that case received federal funds for emergency snow removal and to prevent stream bank erosion while the defen-

2000). As I pointed out in my opinion, however, "DeLaurentis and the Government anticipated the discussion in *Zwick* with considerable prescience." *See DeLaurentis,* 2000 WL 64895, at *4 n. 4. In fact, the Government discussed virtually all of the cases on which the *Zwick* opinion ultimately relied and argued that even under those cases, which require some connection to be established between federal funds received and bribes accepted, such a requirement was satisfied in this case. See Government's Resp. to Def.'s Pre-Trial Mots. at 10–12 (received November 3, 1999). The Government made the right argument. It also had the opportunity to supply the relevant evidence. It failed to do so.

This is not the first time in this case that the Government has tried to use a motion for

reargument as a means of having a second bite at the proverbial apple. Indeed, the Government seems to ascribe to the theory that "if at first you do not succeed, file, file again." The Government is reminded that there must be some end to the litigation of every conceivable issue and that it may be the better part of valor to recognize when that time has come. More importantly, the Court will not countenance repeated attempts to expand the factual record on motions for reargument, especially where there is no indication that the "new evidence" presented was previously unavailable. The Government clearly had in its possession the "new evidence" it now seeks to introduce at the time the motion to dismiss Counts Two and Six of the Indictment was filed.

dant accepted bribes from real estate developers in exchange for sewer access and land use permits. *See id.* The Third Circuit ruled that the uses to which the federal funds were put "bore no obvious connection" to the subject of the bribe, sewer access and land use permits. *See id.* at 687–88.

Similarly, a relationship is lacking in this case between the federal grant money the Hammonton Police Department received and the bribe DeLaurentis allegedly accepted. The Hammonton Police Department received federal funds to hire an additional police officer. DeLaurentis allegedly accepted a bribe for enabling the Choris Bar to retain its liquor license. There is little relation, if any, between the very general purposes for which the Hammonton Police Department received the federal grant money and the subject of the bribe, the circumvention of New Jersey's Alcohol Beverage laws.

This case would be different if the Hammonton Police Department had been given federal funding to aid in the enforcement of state liquor laws or if the Hammonton Police Department, having received the money, dedicated some portion of it to that purpose. In such a circumstance, there would be a relationship between the federal funds received and the bribe DeLaurentis allegedly accepted. *See United States v. Frega,* 933 F.Supp. 1536, 1542–43 (S.D.Cal.1996) (stating that if a state court system received federal funding to appoint counsel in death penalty habeas proceedings and a state court accepted a bribe in exchange for appointing a particular attorney, 18 U.S.C. § 666 would "clearly be implicated," "even if the actual funds used to pay counsel were state funds"). In this case, however, there is no evidence that "community policing" involves substantially different duties than those generally performed by police officers or that the police officer hired with federal funds provided anything other traditional police services. Allowing the Government to bring a prosecution under 18 U.S.C. § 666 on these facts or whenever a local government receives federal funds and "wastes," "diverts," or "dissipates" resources would threaten to upset the very constitutional balance between federal and state authority that the Third Circuit in *Zwick* was afraid of disturbing. *See United States v. McCormack,* 31 F.Supp.2d 176, 189 (D.Mass.1998).

In making its argument, the Government relies on a number of cases which are cited with approval in *Zwick,* however, the Government's reliance on these cases is misplaced. In *Salinas v. U.S.,* 522 U.S. 52, 118 S.Ct. 469, 474–75, 139 L.Ed.2d 352 (1997), the Supreme Court affirmed the conviction of a county sheriff where the federal government provided the county with funds to house federal prisoners and the sheriff accepted bribes from one of the prisoners so that the prisoner could have "contact" visits with his wife and girlfriends. In *United States v. Santopietro,* 166 F.3d 88, 93 (2d Cir.1999), the Second Circuit affirmed the conviction of the Mayor of Waterbury, Connecticut, who accepted bribes from real estate developers in exchange for his influence over Waterbury agencies responsible for administering federal funding for urban development and renewal. In both cases, it was found that the bribes involved posed a "threat to the integrity and proper operation of the federal program." *Salinas,* 522 U.S. 52, 118 S.Ct. at 475; *Santopietro,* 166 F.3d at 93. No such threat existed in this case. DeLaurentis's acceptance of bribes from the owner of the Choris Bar did not threaten the integrity of the community-policing grant received by the Hammonton Police Department. Federal funds "were [not] corruptly administered" nor were federal funds ever in "in danger of being corruptly administered." *Frega,* 933 F.Supp. at 1543. Rather, the funds were put to the proper use of beefing up law enforcement in Hammonton. The police officer funded with federal money reported to the Choris Bar as part of legitimate police activity. The fact that the bar may have operated

because of the bribe DeLaurentis received creates what is at best a tangential and insufficient connection between the bribe DeLaurentis accepted and the federal funds the Hammonton Police Department received. No "particular substantive federal interest" is implicated by the bribe DeLaurentis allegedly received.

## II. Conclusion

For the reasons set forth above, I hold that the Government has failed to demonstrate that "a particular substantive federal interest" is implicated by the alleged acceptance of a bribe by the Defendant, James V. DeLaurentis. In light of the Government's inability to establish a relationship between the federal funds received by the Hammonton Police Department and the bribe allegedly accepted in this case, I conclude that I properly dismissed Counts Two and Six of the indictment in my Opinion & Order of January 27, 2000. Accordingly, I shall deny the Government's motion for reargument. An appropriate order shall be entered by the Court.

### ORDER

This matter having come before the Court on the motion of the Government for reargument of this Court's January 27, 2000, Opinion & Order dismissing Counts Two and Six of the indictment, Robert J. Cleary, Esq., United States Attorney, and Mary A. Futcher, Esq., Assistant United States Attorney, appearing on behalf of the United States, Louis M. Barbone, Esq., Jacobs & Barbone, P.A., appearing on behalf of Defendant, James V. DeLaurentis; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 10th day of February, 2000, hereby ORDERED that the motion of the United States for reargument is DENIED.